# THE UPPER STEAMBOAT COMPANY
## *v.*
## BLAKE.

### ADMIRALTY JURISDICTION.

1. The lease of a wharf is not a maritime contract, but is a contract relating to realty, and is not therefore cognizable in a court of admiralty.
2. The only contracts relating to wharves that are of a maritime character, are those for wharfage, for wharf service rendered to vessels, and such claims are due to the lessee and not to the lessor of the wharf.

No. 88. Submitted October 6, 1893.—Decided December 8, 1893.

HEARING on an appeal by the libellant from a decree of the Supreme Court of the District of Columbia, holding a District Court, dismissing a libel in admiralty, for want of jurisdiction. *Affirmed.*

The COURT in its opinion stated the case as follows:

This is a libel in admiralty to recover what is claimed as rent for a wharf, situated in the District. The libellant is a corporation created under the law of the State of Virginia, and the respondents were partners, constituting a partnership, owning and running steamboats on the river Potomac.

The libellant alleges that on November 23, 1880, it de-
mised and leased to the respondents, partners trading under
the firm name of "Steamer W. W. Corcoran," by writing
under seal, the property described as "all that dock and crib
wharf, and part of platform theretofore used by the libellants
for the steamboat *Mary Washington,* situated within the
limits defined in a certain license stated to have been granted
to the lessors by the engineer of the United States survey,
being opposite the direct prolongation of M Street, S. W., in
Washington city, into the Potomac river"; subject to the
action of said engineer under the rights reserved in the
license granted to the lessor by the engineer, and subject to
certain rights expressly reserved to the lessor by the terms
of said lease; and in consideration of which premises the
respondents proposed and agreed to pay to the lessor, *as
rent* for the premises, the sum of $50 per month, after the
1st. of December, 1880, during the tenancy—the term to
continue until the end of November, 1884; the respond-
ents, by virtue of the lease, took possession of the premises,
the same being used as a wharf and dock by the steamer
*W. W. Corcoran,* a large steamboat running upon the Poto-
mac river of which the respondents are owners; that such
possession has been held and continued by the respondents
until the filing of the libel, they paying the rent therefor until
June 1st, 1886; and that they still hold possession of the
premises, as the libellant alleges, as tenants at will, since the
expiration of the term aforesaid.   The libellant charges that
no rent has been paid since June, 1886, and that the re-
spondents refuse to pay rent; and that the sum of $550 was
due, with interest thereon, at the time of filing the libel.
Prayer for process and judgment, according to the practice
in courts of admiralty.

The respondents, by their answer, deny all rights of the
libellant in the property. They aver that the lease from the
libellant terminated on the 30th of November, 1884; and
that the respondents continued to occupy the wharf without
any express contract of letting, up to about the 1st of June,

1886, paying rent therefor as tenant by sufferance. But about the first of June, 1886, the District of Columbia, claiming a paramount title to that of the libellant, and demanding possession of the property by virtue of such claim, and by virtue of its right to control wharf property in said District, *assumed and took control* of said property, and threatened to oust the respondents therefrom; and under such demand the respondents entered into a contract, whereby the District of Columbia demised and let to the respondents said property for one year, from June 1st, 1886, at and for the rent of $400 per annum, and that respondents have continued to occupy the property as tenants of the said District of Columbia, and not as tenants of the libellant. They deny all indebtedness to the libellant, and all lawful claim of the latter to the property.

The libel was dismissed by the judge below, holding a District Court, upon the ground, as we are informed, that the case stated was not within the admiralty jurisdiction of the United States. An appeal was taken to the General Term of the Supreme Court of the District, and from thence it has been transferred to this court.

It appears from the proofs produced, that the libellant, on the 15th of October, 1874, applied for and obtained from the Commissioners of the District a revocable license to use, without wharfage or other charge, the dock at the western end of M Street, S. W., in the city of Washington, for the purpose of the business of the steamer *Mary Washington*, then owned by the libellant; the limits of said dock, according to the terms of the license, not to extend beyond the water lot on which said M Street abuts on the plan of the city. By the terms of this license, the libellant was required to dredge, clean out and deepen, and put in order said dock, which was then disused, and to make all needful repairs to the wharf at the expense of the libellant, without any claim therefor upon the District; and the libellant was required to render to the District authorities a sworn statement of the expense of such repairs and improvements; such improve-

ments, however, were not to be commenced before the limits of the dock should have been designated by the surveyor of the District.

After accepting this license from the Commissioners of the District, the libellant, apparently repudiating its relation and obligation to the municipality of the District, applied to and obtained from the Chief of Engineers of the Army of the United States, having charge of the public buildings and grounds in the District of Columbia, on the 13th of March, 1875, a license or permit, by virtue of what was supposed to be a power vested in him by the act of the General Assembly of Maryland, of December 19, 1791, " to license the building of wharves on the waters of the Potomac and the Eastern Branch, adjoining the city of Washington, and to regulate the material, manner and extent thereof," and by subsequent acts of Congress, etc., whereby was granted to the libellant and its assigns, " permission to *build, erect, keep and maintain* one good and substantial wharf on the Potomac river, in the city of Washington, on the west side of Water street, south of the old wall built into said river on the prolongation of the line of the north side of M street, south; said wharf to extend to the west end of said wall, thence south and east so as not to interfere with an existing wharf, and to extend southward not further than the north line of M street, &c.; and to put up and erect thereon such buildings and improvements as may be necessary; provided, however, that said buildings and improvements shall be subject to the general regulations for buildings in the city of Washington, &c., and said wharf shall be constructed in conformity with the provisions of the ordinances of the late corporation of Washington applicable thereto."

After this, the present board of Commissioners, organized under the act of Congress of 1878, on the 18th of April, 1889, gave notice to the libellant that the previous license of October, 1874, to use the dock at the western end of M street, S. W., in the city of Washington, for the purpose of the business of the *Mary Washington,* was revoked, and a

written contract of license of said wharf executed to the respondents.

*Mr. W. Willoughby* for the appellant (libellant) :

The subject matter of the libel is of admiralty jurisdiction. *Canal Boat " Kate Tremaine,"* 5 Benedict, pp. 62-3 ; 9 Id., 464 ; *Ins. Co.* v. *Dunham*, 11 Wall., 1 ; *De Loid* v. *Boit*, 2 Gall., 398 ; 1 Sumner, 551 ; 2 Curtis, 332 ; 2 Story, 182 ; 2 Ware, 148 ; 1 Kent Com., 365-71 ; *Ex parte Easton*, 95 U. S., 68 ; *Johnson* v. *McDonough*, Gilpin, 101 ; *Ex parte Lewis*, 2 Gallison, 483 ; Henry's Adm. Jur. and Pr., pp. 39, 320.

*Messrs. Edwards & Barnard* for the appellees (respondents) :

1. The contract which is made the foundation of the libel *in personam* in this case, is not within the admiralty or maritime jurisdiction of the court below. Rules [of the Sup. Ct., D. C.] in admiralty, 14 to 21 ; *Ramsay* v. *Allegro*, 12 Wheat., 611 *et seq.*

2. The libellant having no title or estate, could assign legally nothing to the respondents; and they are therefore not estopped from showing that fact in defense of this suit. *Fuller* v. *Sweet*, 30 Mich., 237 ; Taylor's Landlord and Tenant, Sec. 707 ; *Carpenter* v. *Thompson*, 3 N. H., 204 ; Wood's Landlord and Tenant, 372 ; *Milton* v. *Haden*, 32 Ala., 30 ; *Dupas* v. *Wassell*, 1 Dillon, 213.

3. The District of Columbia is the rightful authority to give license or lease for use of wharves in the said District. *D. C.* v. *Johnson*, 1 Mack., 51 ; S. C., 3 Id., 120. In 1 Mackey, 64, Chief Justice Cartter says: " If the estate has never existed which it is claimed was contracted for, the tenant may show it."

Mr. Chief Justice ALVEY delivered the opinion of the Court :

On the statement of facts, two questions are presented:

1. Whether the matter alleged is properly within the jurisdiction of the admiralty courts of the United States; and,

2. Whether the Commissioners of the District of Columbia, as officers of the municipal corporation, have control and supervision of the wharves along the shore of the Potomac river, within the District of Columbia, with right to license and regulate the use thereof; or whether that right and control is vested in the chief of engineers, under Section 1797 of the Revised Statutes of the United States.

1. As to the first of these questions, we are of opinion that the case is not such as to be embraced within the admiralty jurisdiction of the United States. It would certainly be extending that jurisdiction further than any case, of which we are aware, has hitherto carried it. That wharves, piers, docks, or landing places, are essential as means of conducting maritime trade and commerce, must of course be conceded. But does it follow that all contracts relating to such wharves and docks are maritime contracts? It has been said that the admiralty jurisdiction, in cases of contract, depends primarily upon the nature of the contract, *and is limited to contracts, claims and services purely maritime*, and touching rights and duties appertaining, to commerce and navigation. *Ferry Co.* v. *Beers*, 20 How., 393; *Ex parte Easton*, 95 U. S., 68, 72. It is clear, says the Supreme Court, in the case last referred to, that a contract for the use of a wharf by the master or owner of a ship or vessel is a maritime contract, and, as such, that it is cognizable in the admiralty; that such a contract, being one made exclusively for the benefit of the ship or vessel, a maritime lien in the case supposed arises in favor of the proprietor of the wharf against the vessel for payment of reasonable and customary charges in that behalf for the use of the wharf, and that the same may be enforced by a proceeding *in rem* against the vessel, or by suit *in personam* against the owner. And that a demand for wharfage is a maritime contract, and therefore cognizable and enforceable in a court of admiralty, would seem to be generally held by the courts of the country. *Brookman* v. *Hamill*, 43 N. Y., 554. Indeed, wharfage has, from a remote time, been regarded as among the usual

and necessary port charges of a vessel, and hence the demand for such services may be enforced against the vessel receiving the benefit of them. But is there not an essential difference between a claim or demand for wharfage, as understood in the laws and usages of navigation, and a claim for rent as such of a wharf, under a contract that, assuming it to be valid as between the parties, creates the relation of landlord and tenant? Under such contract, the rent is payable, though a vessel should never approach the wharf, or though the wharf may be used for purposes quite foreign to the maritime trade. It could hardly be contended that a contract for building or repairing a wharf is embraced in the class of contracts denominated maritime, any more than it could (and not with as much propriety) be contended that a contract to build a ship is a maritime contract; and it has been expressly held by the Supreme Court of the United States that a contract for building a ship is not of a maritime character, and therefore not within the admiralty jurisdiction. *Ferry Co.* v. *Beers,* 20 How., 393. And so it has been held by the same court that mortgage contracts or pledges of vessels are not within the admiralty jurisdiction, but are purely land contracts. *Bogart* v. *Steamboat John Jay,* 17 How., 399. Nor can we suppose that a contract for the sale of a wharf could be regarded as a maritime contract; and if not, why should a lease of a wharf that may be for a long term, with annual rent reserved, and, as may be, with conditions and stipulations for repairs or rebuilding the same from time to time, be regarded as a maritime contract, and as such cognizable only in a court of admiralty? We are clearly of opinion that the lease of a wharf, supposing it valid, is not a maritime contract, in any proper sense, but is a contract relating to realty, and must be performed on the land. *Sheppard* v. *Steele,* 43 N. Y., 52. The only contracts relating to wharves that are of a maritime character are those for wharfage, for wharf service rendered to vessels, and such claims are due to the lessee and not to the lessor of the wharf.

We are of opinion, therefore, that the learned judge below was right in dismissing the libel for want of jurisdiction.

2. With respect to the second question presented, we need only say, that as we have disposed of the case upon the ground of the want of jurisdiction, it would seem to be improper for this court to express any opinion as to that question. Another jurisdiction must be invoked before that question can be authoritatively decided.

The decree appealed from is affirmed, with costs to the appellees.

*Decree affirmed.*