SALISBURY v. SEVENTY THOUSAND FEET OF LUMBER et al.

(District Court, S. D. New York. March 26, 1895.)

DEMURRAGE—DELIVERY OF CARGO— SALE "FREE ON BOARD"—VESSEL TO ARRIVE —DELAY AT SELLER'S RISK.

The defendant B. (brought in by petition of defendants) loaded the libelant's boat C. with lumber at Albany, and consigned it to himself at New York. He then sold the lumber to H. who bought it for export by the steamer A. P.; B. agreed to deliver it "f. o. b. vessel where she lies" (meaning free on board the A. P., and clear of all claims or liens). When B. sent the boat alongside the A. P. to deliver the lumber, the A. P. was not ready to receive it, and the boat was detained six days before the lumber was received, for which delay the lumber, after delivery on the steamer, was libeled for demurrage. B. claimed to have followed H.'s orders and those of the agents of the steamer as to the time of tender alongside, but upon conflicting evidence on this point, it being found that the lumber was received as soon as the customary permit obtained from the steamer specified: Held, that the risk of delay in the readiness of the steamer, and the burden of proving directions to go alongside earlier than the permit stated, were on the seller, B.; that the weight of evidence did not support his contention, and that though the lumber was liable for the demurrage, B. was personally bound to indemnify H. against the claim, and to pay the same with costs.

This was a libel by Nelson H. Salisbury, as executor, etc., against 70,000 feet of lumber and Horace F. Burroughs, Sr., to recover demurrage.

Hyland & Zabriskie, for libelant.

Convers & Kirlin, for Herbst, claimant of the lumber.

Charles H. Hough, for Horace F. Burroughs, Sr.

BROWN, District Judge. The libel was filed to recover freight and demurrage upon the delivery of 70,000 feet of lumber from the river boat E. J. Carroll, upon the steamship Afghan Prince on November 21, 1894. The lumber had been shipped on board the Carroll at Albany by the defendant Burroughs, consigned to himself at New York, and he had thereafter sold the lumber to Herbst who bought it for the purposes of export by the Afghan Prince. The contract between Mr. Burroughs and Mr. Herbst was that the lumber should be "delivered f. o. b. vessel where she lies within lighterage limits, shipping instructions hereafter." The proofs show that by the language used it was meant that the lumber in question should be delivered by the seller free from all claims or charges alongside the ship, by which it was intended to be exported, and into her custody, at the time when the ship was ready to receive it; and that the seller should procure, according to custom, the ship's receipt therefor, and deliver it to the buyer.

The boat with lumber on board was sent by Mr. Burroughs alongside the steamer on the afternoon of November 15th; but the steamer not being ready to receive it, the lighter was moved to the opposite side of the slip, where it remained until the 21st, when it was hauled alongside and the lumber removed to the ship on that day. For this delay in unloading, demurrage for six days is claimed. Mr. Herbst contends that he was not liable for the delay, because he was entitled to have the lumber delivered free of all charges, and because he had not caused any delay in the delivery. Mr. Burroughs claims that the lighter was taken alongside on the 15th under directions of Mr. Seager, the agent of the steamer, or of other persons representing the line of steamers, to whom he had been referred for instruction by Mr. Herbst, while the latter denies that any such reference for instructions was given. Mr. Burroughs was made a party defendant upon petition.

By the contract between Burroughs and Herbst the latter was bound to give instructions as to the time when the lumber should be taken alongside the steamer for delivery. If, instead of giving such instructions himself, therefore, he referred Mr. Burroughs to the agents of the steamer for instructions, Mr. Herbst, as between him and Burroughs, would be bound by any instructions given to Burroughs by the representatives of the steamer, and therefore bound to pay any legal claims for demurrage arising through compliance with such instructions, and look to the steamer or her agents for his own indemnity. Mr. Herbst denies, however, having referred Mr. Burroughs to the agents of the line for any instructions, though admitting that he referred him to them for information, stating that

he had been unable to ascertain from them when the steamer would be ready.

On the 16th of November Mr. Goudie, an employé of Mr. Herbst, obtained a permit for loading the lumber upon the steamer upon the 20th; and the cargo as received within 48 hours after that day, which was sufficient under the custom proved. Both Mr. Herbst and the representatives of the steamer deny any appointment, or the designation of any fixed day for the receipt of the lumber, other than the 20th. The chief reliance of Mr. Burroughs is upon an alleged conversation between his salesman, Mr. Oleson and Captain Saunders, one of the superintendents of the steamship line. The latter testified that in answer to Mr. Oleson's urgent request to receive the cargo without delay, he merely promised that the ship would take it as soon as she could, if he chose to send the lighter to the ship at the Atlantic Basin. Mr. Oleson testified that he promised that if he would send the lighter there that the discharge should be commenced on Friday the 17th.

Mr. Burroughs had, for a week previous, been employing the lighter in other work with this lumber on board, to prevent demurrage accruing, and when he received word that the lumber would be received on the 15th, had other employment engaged for the lighter on that day. I have no doubt that he supposed the lumber would be received at once. On the other hand it was known that the steamer had been delayed in her arrival; had afterwards been obliged to go upon dry dock, and that the time of her loading this lumber, which was to go upon her deck, was uncertain. The ordinary practice of the agents of the line was to give a written permit fixing the time for unloading. In claiming to rely upon oral directions, instead of upon the ordinary written permit as to the time of receiving cargo, the burden of proof is upon Mr. Burroughs to show clearly that a definite time was undoubtedly and definitely fixed. In the contradiction between the two principal witnesses in this regard, I do not think that there is such a preponderance of evidence on the side of Mr. Burroughs as justifies the court in holding that such a definite agreement was made. The testimony of Mr. Oleson, the chief witness on that point, is weakened by errors in other respects, which the preponderance of evidence seems to show that he has made in other parts of the case; first, as respects a time fixed by Mr. Seager, in a conversation which is said to have been had before the vessel arrived; and secondly, as respects the permit for the delivery given to Mr. Oleson on the 16th of November, and Oleson's statement on that day, that he had been unable to obtain from the agent of the ship any definite time to be fixed.

I must hold, therefore, upon the testimony, that Mr. Burroughs in sending the lighter alongside before the permit was obtained, sent her there without any definite appointment, and at his own risk. In selling the lumber free on board of a vessel which was to arrive, Mr. Burroughs took the risk of the delay until the time when the vessel was ready to receive the goods. Upon such a contract he could only avoid that risk, by fixing a time for the delivery, when it should be the duty of the vendee or of the ship to receive it. In this

case, the contract was silent as to the time of delivery, and I cannot find that any fixed day was subsequently agreed upon before the time named in the permit of the 16th for delivery on the 20th. The carrier, however, was entitled to compensation for the use of his boat. She was under the direction of Mr. Burroughs, the shipper; he is liable to the lighter for her detention, and has not sufficiently shown that Mr. Herbst, through any reference to the steamship agents, or any fixed time agreed on with them has relieved him of that liability or entitled him to call upon Mr. Herbst for indemnity.

Mr. Burroughs, before suit, tendered to the libelant's attorneys the freight, though refusing to pay demurrage. The attorneys refused to receive it, lest by receiving it they should release any lien for demurrage. There must be a decree, therefore, for the freight and demurrage against the lumber and the defendant Burroughs, with the provision that he is primarily liable to pay the amount; with an order of reference to ascertain the value of the use of the lighter, if it is not agreed on. The question of costs reserved as between him and the libelant.

The defendant Herbst is entitled to a decree against Burroughs, with costs.