EVANS v. NEW YORK & P. S. S. CO., Limited, et al.

(District Court, S. D. New York. December 19, 1906.)

1. SHIPPING—LOSS OF GOODS—LIABILITY OF CARRIER.

A steamship company, which, on the arrival of its vessel, placed cargo of a shipper in a warehouse on the wharf, which it had the right to use, and from there made delivery to the shipper, the goods not having been stored for the account and risk of the shipper, remained responsible therefor until delivery and is liable for a shortage due to some of the goods having been stolen from the warehouse.

2. WAREHOUSEMEN—CONTRACT CREATING—NEGLIGENT LOSS OF GOODS.

A steamship company for a stated sum acquired the right to use a pier, and also a room in a warehouse belonging to the owner of the pier, which such owner undertook to keep locked and guarded outside of business hours in connection with the other parts of its warehouse. The company placed certain goods to be delivered to a consignee in the room on Saturday afternoon, and on Monday morning it was discovered that a part thereof had been stolen. Held, that the owner of the warehouse was a bailee for hire against whom a demand and refusal to deliver raised a presumption of negligence which was not overcome by evidence that a guard was constantly maintained over the warehouse, where the goods taken were more than half a ton in weight and in large packages.

3. ADMIRALTY—PARTIES.

One who is bound to indemnify a party liable in admiralty and against whom such party has a right of action over, although not cognizable in admiralty, may, under the equity of the fifty-ninth rule, be brought into the original suit in admiralty by petition of such party or as an original respondent in order that the rights of all parties may be adjusted in a single suit.

4. WAREHOUSEMEN—WORDS AND PHRASES—"STORED."

Where a steamship company had a right to use a wharf belonging to a certain warehouse, and also to use the warehouse, and removed the cargo of a vessel and placed it in the warehouse from which it was stolen, the cargo was not "stored," in a technical sense, so as to render the warehousemen liable as such; it not having been delivered to them and a warehouse receipt taken.

In Admiralty. Action on bill of lading.

See 145 Fed. 841.

Frank E. Bradley (Mr. Ingram, of counsel), for libelant.
Convers & Kirlin, for the steamship company.
Beard & Paret, for William Beard and others.

HOUGH, District Judge. The libelant was the owner of certain rubber laden on the steamship Capac belonging to the respondent steamship company. The vessel arrived in dock on the evening of May 31, 1905, but the rubber remained on board until noon of Saturday, June 3d, when it was removed from the vessel and put into an adjacent warehouse belonging to the respondents Beard. The discharge of the rubber was completed by 4 p. m., and shortly thereafter the warehouse was closed by the employés of Beard, and work ceased until the following Monday. At 9 a. m. of that day the employés of Beard opened the warehouse, and it was immediately discovered that a considerable quantity of the libelant's rubber had disappeared. It is inferable from the testimony that it was stolen, but

exactly when, how, by. whom, or under what circumstances remains undiscoverable. The libelant's agents had paid the freight on Friday, June 2d, and on the following Monday morning sent a clerk to get the rubber. This clerk was advised of the shortage, and (on conflicting evidence) I find was also advised of the fact that the rubber had disappeared between Saturday evening and Monday morning, and while it remained in Beard's warehouse.

The steamship company had not "stored" the rubber in the warehouse in the technical sense of the word, viz.: It had not delivered it to the Beards as warehousemen and procured a warehouse receipt therefor. The Beards own both the warehouse and the wharfage rights appertaining to the adjacent pier where the steamship lay, and for a stated sum paid by the steamship owners the latter had acquired from the Beards not only the right to use the pier and adjacent bulkhead, but also to use the room in which the rubber was deposited, for a time which had not expired at the date of the discovery of the loss. On the morning of each business day this room was opened by Beard's employés, and the steamship company was entitled to place therein anything that it pleased. Each evening it was closed, also by Beard's employés, and thereafter until the morning of the next business day the doors, windows, fastenings, and approaches of and to this room were watched and cared for by the servants of the Beards in like manner as was the rest of their extensive wharf and warehouse property, of which this room was but a small part. The room communicated with other parts of the establishment not rented to the steamship company, and the keys thereof were always in the possession of Beard's servants. The rubber lost consisted of about 20 packages weighing in all over 1,200 pounds.

The steamship company has pleaded the single defense that it stored the rubber with the Beards in pursuance of the authority contained in the bill of lading after the libelant upon due notice had neglected and refused to take delivery thereof. The delay on the libelant's part in sending for the rubber was unusual, and, if the shipowner had really exercised the authority conferred upon him by the bill of lading and stored the goods for libelant's account and risk, the case would have presented a different aspect. This was not done. The right so to do may have existed, but it was not exercised. The goods were not stored for libelant's account, and nothing was done by the shipowner to terminate or change its carrier's liability down to the time that the libelant's agent appeared and demanded his rubber. When such appearance and demand was made, the shipowner's representative did not refer the libelant's representative to any warehouseman to get what remnant of the rubber remained, but himself made delivery thereof, as, indeed, under the circumstances, I think he was bound to do. I entertain no doubt of the liability of the steamship company.

Points other than the above were argued at the hearing, but this is the only defense in the answer, and I decline to consider defenses not pleaded.

That the Beards are responsible both to the carrier and owner of the rubber seems to me clear. They assert that the contract between

themselves and the carrier was but a lease of the room from which the rubber disappeared, and that they therefore should not be regarded as bailees of the property placed therein. This would be true if they had not also undertaken for hire duly paid to watch and care for the room outside of business hours. Beers v. Simpson, 2 L. J. (O. S.) K. B. 212; Sherman v. Commercial Printing Co., 29 Mo. App. 31. But their agreement to watch the room during nights and Sundays in like manner as they did their other premises renders the transaction a depositum and themselves bailees for hire, against whom a demand and refusal to deliver raises a presumption of negligence. Fairfax v. N. Y. C. & H. R. R. Co., 67 N. Y. 11. In endeavoring to rebut this presumption, they have shown a system of elaborate watching, and proved that the watchers failed to ascertain that anything was happening during a time when some one stole and carried away more than half a ton of material packed in bags of an average weight of about 70 pounds. From such failure to note so remarkable and difficult an occurrence a jury would be warranted in finding a verdict against them, and I arrive at a similar conclusion.

Whether, however, the warehousemen are liable in admiralty presents a question not in my opinion finally settled by authoritative decision. Exceptions to this libel were overruled in 145 Fed. 841, upon the ground that on the allegations of the libel there had been a delivery of the rubber to the Beards in order that the latter might in turn deliver to the libelant, which fact rendered the matter one of admiralty jurisdiction; the storage being incident to the contract of carriage. I do not think that the evidence sustains this allegation. Nevertheless under the settled practice of this court, I cannot dismiss the libel as against the Beards. It seems clear that neither the libelant nor the steamship company could have maintained an original suit in admiralty against the Beards, because the negligence resulting in the disappearance of the rubber from the land warehouse did not give rise to a maritime tort, and neither was the contract between shipowner and warehousemen a maritime contract. Having found, however, that the carrier is responsible to the libelant, the former clearly has his remedy over against the warehousemen, and, in order to prevent circuity of action and multiplicity of suits, it would have been, under our practice, competent for the shipowner to have petitioned the warehousemen into this proceeding, and, if this could have been done, no reason appears why the warehousemen may not be proceeded against as an original respondent. It is generally considered that the fifty-ninth rule grew out of the decision of Brown, J., in The Hudson (D. C.) 15 Fed. 162. The reason for the rule, as put by the same judge in his return to petition for writ of prohibition in Re New York, etc., S. S. Co., 155 U. S. 525, 15 Sup. Ct. 183, 39 L. Ed. 246, is that he who is "primarily liable and bound to indemnify" shall be brought into the original action in order that the rights of all parties interested in the same occurrence shall be adjudicated in one proceeding. It was on this principle that The Alert (D. C.) 40 Fed. 836, was decided, and cited with approval in The Barnstable, 181 U. S. 467, 21 Sup. Ct. 684, 45 L. Ed. 944. It is quite true that in The City of Lincoln (D. C.) 25 Fed. 836, the same distinguished judge

was at great pains to satisfy himself that the party sought to be brought in by petition was guilty of a marine tort; but I know of no case in which the question was discussed whether a person alleged to be ultimately liable, but not for reasons that would have warranted an original suit in admiralty, could be brought in under the equity of the fifty-ninth rule, except Salisbury v. 70,000 Feet of Lumber (D. C.) 68 Fed. 916, and in that the reported opinion does not reveal the discussion. As counsel for the third party, I there urged before the same judge that the limit of admiralty power to avoid circuity of action was to bring into an admiralty suit only those persons against whom a cause of action in admiralty presently existed, which, after seizure of the res by the libelant, was not the case as against the third party. The contention was overruled, and the form of decree directed shows clearly the ground of the assumed jurisdiction, viz., the right to demand indemnity from the party petitioned against.

More recently, the rule has been stated in this court as "requiring the appearance of any additional defendant who may be responsible for the claim or a part thereof." Dailey v. City of New York (D. C.) 119 Fed. 1005. This rule has been very frequently applied in unreported matters, and within a few days stated as authorizing anyone against whom a right of action over exists on the part of the original respondent or claimant to bring in such other person that "all the matters can be disposed of in one trial." The Crown of Castile (D. C.) (N. Y. Dec. 6, 1906) 148 Fed. 1012.

Solely, therefore, upon the ground that the Beards are bound to indemnify one who is liable in admiralty, I retain this libel against them.

Let a decree be entered against both the respondents, with a direction to collect first from the Beards; any amount not recovered upon due execution against them to be paid by the steamship company. Costs to follow the decree, and an order of reference granted if the amount is not agreed upon.