## CHESAPEAKE & O. RY. CO. v. JONES.

(Circuit Court of Appeals, Fourth Circuit. April 2, 1921.)

No. 1867.

Wharves ☞20(6)—Lessor, assuming duty of frequent inspection to keep in repair, liable for negligent obstruction injuring vessel.

Where railroad company, covenanting to keep dock leased by it to the United States "in good repair to the satisfaction of the government officer in charge," took on itself the task of constantly inspecting and repairing the dock, it became liable for injuries to a vessel belonging to a third person, caused by an obstruction, consisting of broken and fallen piles projecting into the slip, which it had negligently failed to discover and remove.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk; Edmund Waddill, Jr., Judge.

Action by Fred E. Jones, doing business as the Fred E. Jones Dredging Company, against the Chesapeake & Ohio Railway Company. From a decree for plaintiff, defendant appeals. Affirmed.

William Leigh Williams, of Norfolk, Va., for appellant.

George M. Lanning, of Norfolk, Va. (Baird, White & Lanning, of Norfolk, Va., on the brief), for appellee.

Before KNAPP and WOODS, Circuit Judges, and ROSE, District Judge.

KNAPP, Circuit Judge. The appellant, Chesapeake & Ohio Railway Company, owner of Pier No. 5, Newport News, Va., leased the same to the United States, for the use of the army, for a year from July 1, 1918, covenanting to "keep the premises in good repair to the satisfaction of the government officer in charge." On July 1, 1918, appellee chartered the tug America to the Quartermaster's Corps of the Army, to be returned at the end of the agreed term in good condition, ordinary wear and tear excepted, and in this service the tug went from time to time as ordered to Pier No. 5, to assist in docking and undocking transports and other vessels. Late in the evening of January 8, 1919, while backing out from alongside this pier, and without fault on her part, the tug came in contact with one or more piles which had broken loose at the top and fallen over, so that they projected into the slip at an angle of about 45°; the ends being some three or four feet under water. For the resulting damages to the tug, the amount of which was agreed upon, the court below entered a decree against the railway company, and it appeals.

The argument for reversal is, in brief, that appellant owed no duty to Jones, either by contract or by law, to keep this dock free from obstructions; that the covenant in the lease to keep the premises in good repair was for the benefit of the lessee, and did not inure to the benefit of other persons; that appellant cannot be held liable, even by the government, because it had no notice of the submerged piles; that, "where a lease contains covenants to repair, the lessor has no right to invade the

premises for the purposes of inspection, and is only bound to make repairs when called upon to do so by the lessee, and after notice of the need for repairs"; and that "any other rule would be absurd in the practical affairs of life," because it "would impose upon every lessor the constant duty of inspecting the leased premises, wherever he had entered into a covenant to make repairs."

But that is precisely the duty which the railway company seems to have assumed. Leake, its supervisor of bridges and buildings, testified:

"My duties were to inspect the piers and make repairs to everything that is found needing it. * * * We inspected the pier every day or two; sometimes we missed a day, but just as we could get to it. * * * I am employed by the C. & O. Railway and paid by them, and my business is to inspect the company's piers at Newport News and keep them in order. * * * We are supposed to go over them every day; sometimes we do not get a chance, and it may be two or three days. * * * I could not say; my duties called me there sometimes two or three times a day."

Roper, employed by the Army as "docking master of ships," testified that he saw the submerged piles in the position described before the accident and reported them to the Tug Director, though not to Leake, "about a week or ten days after the pile was down in the dock, when I first found them there"; and Morgan, another docking master, also testified to seeing the obstruction, saying, "I remember that the time I had seen the piles was prior to the time I heard about the accident."

It is inferable from this testimony, as the trial court presumably found, that appellant, whose contract required it to keep the pier in good condition, had for that purpose assumed the duty of daily or at least very frequent inspection; that this duty was not properly discharged, since, if it had been, the submerged piles would have been promptly discovered and removed; and that appellant's negligence in that regard was the proximate cause of the damage sustained by the tug.

For this neglect of a duty which it had undertaken to perform the company must be held responsible. In order to meet its obligation to maintain in good repair, or for other motives of self-interest, it took upon itself the task of vigilantly watching the leased premises, and thus became liable for injuries caused by an obstruction which it negligently failed to discover and remove. In short, in the circumstances here disclosed, appellant was bound to take reasonable care for the safety of vessels entitled to use the pier, and is answerable for a dangerous condition which was known to it, or which would have been known by the exercise of reasonable diligence. Smith v. Burnett, 173 U. S. 430, 19 Sup. Ct. 442, 43 L. Ed. 756; Edwards v. Railroad Co., 98 N. Y. 245, 50 Am. Rep. 659; Nickerson v. Tirrell, 127 Mass. 236; E. Beck & Co. v. Hanline Bros., 122 Md. 68, 89 Atl. 377.

Affirmed.