## TRANSMARINE CORPORATION v. FORE RIVER COAL CO.

District Court, D. Massachusetts. October 18, 1928.

No. 100.

Carver & Schell, of Boston, Mass., for libelant.

Blodgett, Jones, Burnham & Bingham, and Albert T. Gould, both of Boston, Mass., and Burlingham, Veeder, Masten & Fearey, of New York City, for Massachusetts St. Ry. Co.

Fitz-Henry Smith, Jr., of Boston, Mass., for respondent.

BREWSTER, District Judge. The Fore River Coal Company chartered the steamship Surico for two voyages with coal from Hampton Roads to discharging berth alongside the wharf of the Eastern Massachusetts Street Railway Company at Fore River, Quincy, the coal company to discharge the coal; the charter expressly providing, "Suitable berth and sufficient water guaranteed, both at loading and discharging berths."

The steamer broke adrift from the wharf at Quincy and was damaged. As a result this libel was filed, wherein it is alleged that the damages were caused by the negligence of the respondent, and by breach by the respondent of the terms of the contract of charter in directing the steamer to the dock and mooring her thereto, and in failing to furnish a safe and suitable discharging berth.

The respondent, under admiralty rule 56, has filed a petition to make the Eastern Massachusetts Street Railway Company a party respondent, and in the petition it is alleged that the respondent was lessee from the railway company of "certain space for the storage of coal adjoining the wharf" under a lease by which the railway company agreed to unload such coal as might be delivered alongside the wharf, and "to maintain said berth for a period of two years, from date said premises are ready for occupancy by the lessee, in good condition to re-

ceive and accommodate vessels of approximately 6,600 tons capacity of a type similar to the steamers Bristol and Transportation, recently discharged at this berth," and that the Surico was of the capacity and type referred to.

It is also alleged in the petition that, irrespective of the lease, the railway company was obligated, as owner of the berth, to maintain it in a safe and suitable condition for the Surico, as said steamer was invited to lie at said berth, and there discharge her cargo, not only by the petitioner, but also by the said railway company, the latter being owner of a large part of said cargo, and that at the time the steamer went adrift the railway company was engaged in discharging its own coal, by its own agents and methods, for which the petitioner was not responsible.

The proceedings are now before the court on exceptions of the railway company to the petition of the respondent, on the ground that the libel and the petition do not set forth a proper case for impleading the railway company under the fifty-sixth rule. It is the contention of the Fore River Coal Company that the railway company is liable both to the libelant and the respondent by reason of the lease, the situation of the parties, and the circumstances of the case, as disclosed by the pleadings.

The railway company denies any liability to the libelant and contends that, whatever its liability to the respondent may be, that liability is nonmaritime and cannot be enforced in an admiralty proceeding.

Rule 56 in part provides that: "In any suit, whether in rem or in personam, the claimant or respondent (as the case may be) shall be entitled to bring in any other vessel or person (individual or corporation) who may be partly or wholly liable either to the libelant or to such claimant or respondent by way of remedy over, contribution or otherwise, growing out of the same matter."

In other jurisdictions, notably in the Second Circuit, the courts have consistently adhered to the opinion that this rule does not entitle a libelant or respondent to bring in a third party, if the liability sought to be enforced against the impleaded party is based upon an agreement not in itself maritime. Aktieselskabet Fido v. Lloyd Braziliero (C. C. A.) 283 F. 62; Lamborn & Co. v. Compania Maritima Del Nervion et al. (D. C.) 19 F.(2d) 155, 1927 A. M. C. 502; Morning Light-Starlight (C. C. A.) 7 F.(2d) 488, 1925 A. M. C. 1648; Luckenbach S. S. Co. v. Gano Moore Co. (D. C.) 298 F. 343. My attention has not been called to any

decision in this circuit placing a like limitation upon the scope of the rule; but, in my opinion, the limitation is necessary, if the jurisdiction of admiralty courts is to be confined to matters wholly maritime. .

The question, therefore, is presented, whether upon the facts as alleged in the pleadings, which for the present purposes must be accepted as proved, the right, or remedy over, sought to be enforced against the railway company, is of a maritime nature.

It is clear on the authorities that a lease of land adjoining a wharf, and even under some circumstances a lease of a wharf, is not a maritime contract. An examination of the cases supporting this proposition shows that the rights sought to be enforced in the admiralty courts were rights ex contractu, growing out of the lease. The James T. Furber (D. C.) 157 F. 126, which Judge Hale regarded as a rather close case, involved a lease to a steamer and the owners of the privilege of running a line of steamers from the wharf for a certain term for a gross rental, and which gave to the lessee the exclusive right to use the wharf during the term, and made the rent payable, whether or not the wharf was used by the lessee. It was held that the lease was not wholly a maritime contract, and could not be enforced in a court of admiralty.

It does not follow necessarily that a contract nonmaritime in nature may not give rise to certain obligations and duties to a vessel which would render the contracting party liable in tort for his negligent failure to fulfill these obligations.

In the case at bar the libelant alleges, not only breach of the charter party, but also negligence on the part of the respondent. The respondent, in its petition, in substance avers that the railway company rather than the respondent was responsible for this negligence; that, both by reason of its covenants with the respondent and under general principles of maritime law, it owed a duty to the vessel to keep the wharf in good repair and a safe berth for steamers.

It will be noted that the petition recites that a portion of the cargo had been consigned to the railway company, and that the Surico had been invited to discharge her cargo at the wharf of the railway company, and that, when the steamer broke away, that company was actually engaged in discharging its own coal. As owner of the wharf and consignee of the cargo, the railway company owed a duty to the vessel to exercise reasonable diligence respecting the condition of the berth. Smith v. Burnett, 173 U. S. 430, 19 S. Ct. 442, 43 L. Ed. 756. In that case

Chief Justice Fuller refers to The Calliope [1891] A. C. 11, and quotes the Lord Chancellor as follows: "In this case the wharfinger, who happens to be the consignee, invites the vessel to a particular place to unload. If, as it is said, to his knowledge the place for unloading was improper and likely to injure the vessel, he certainly ought to have adopted one of these alternatives; either he ought not to have invited the vessel or he ought to have informed the vessel what the condition of things was when she was invited, so that the injury might have been avoided."

He also quotes Lord Watson to this effect: "I do not doubt that there is a duty incumbent upon wharfingers in the position of the appellants towards vessels which they invite to use their berthage for the purpose of loading from or unloading upon their wharf; they are in a position to see, and are in my opinion bound to use reasonable diligence in ascertaining whether the berths themselves and the approaches to them are in an ordinary condition of safety for vessels coming to and lying at the wharf."

A failure on the part of the impleaded party to perform its full duty in this regard would give rise to rights of recovery which would be of a maritime nature and recoverable in a court of admiralty. Chesapeake & O. Ry. Co. v. Jones (C. C. A.) 272 F. 891. In that case, which was an admiralty proceeding, although the record does not show it, a lessor in its lease covenanted to keep Pier No. 5, Newport News, Va. "in good repair to the satisfaction of the government officer in charge." The libelant's tug was injured by loose piles which the lessor negligently allowed to project into the slip. The court says: "For this neglect of a duty which it had undertaken to perform the company must be held responsible. In order to meet its obligation to maintain in good repair, or for other motives of self-interest, it took upon itself the task of vigilantly watching the leased premises, and thus became liable for injuries caused by an obstruction which it negligently failed to discover and remove. In short, in the circumstances here disclosed, appellant [lessor] was bound to take reasonable care for the safety of vessels entitled to use the pier, and is answerable for a dangerous condition which was known to it, or which would have been known by the exercise of reasonable diligence."

The court would not be ousted of jurisdiction by the fact that this breach of duty on the part of the railway company also amounted to a breach of the covenants in its lease. Chesapeake & O. Ry. Co. v. Jones, supra.

My conclusion, therefore, is that upon the allegations of the libel and the petition the respondent is entitled under rule 56 to implead the Eastern Massachusetts Street Railway Company, and the exceptions of that company must be overruled.