## D. M. PICTON & CO., Inc., et al. v. EASTES et al.
### No. 11755.

Circuit Court of Appeals, Fifth Circuit.
March 5, 1947.

Rehearing Denied April 19, 1947.

Writ of Certiorari Denied June 23, 1947.
See 67 S.Ct. 1756.

Thos. F. Porter, of Lake Charles, La., M. A. Grace and Edwin H. Grace, both of New Orleans, La., David M. Picton, Jr., of Houston, Tex., and Major T. Bell, of Beaumont, Tex., for appellants.

Alvin O. King and C. A. McCoy, both of Lake Charles, La., for appellees.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

The libel was in personam for damages to the motor boat "Tramp," as the result of a collision in the waters of the Gulf of Mexico, a mile or two from the shore line, with a partly submerged and concealed pile. The claim was that it was the fault of both respondents that the pile was there constituting a concealed menace to navigation. The fault charged against Superior was that it had originally driven the pile as a part of the "Creole Drilling platform," and that, when the platform was later burned leaving burned and damaged piling and timber as a menace to navigation, it had failed to remove them. The fault of Picton was alleged to be that, though it had contracted with Superior to remove all burned and damaged piling and timber, it had failed to do so.

The respondent, Superior, answered, denying that the Tramp had, as alleged, collided with a pile. Admitting that it had erected the platform as alleged, that the platform had burned, and that it had contracted with Picton and Company to pull and remove all piling and timbers, it denied that Picton had left any piling which was a menace to navigation. Finally, it alleged; that, if mistaken in this and the Tramp was injured by collision with a pile which had been a part of the Creole platform, the fault for its being left there was Picton's which should be held solely liable to plaintiff, or if not solely, primarily; and if libellant should be awarded a decree against Superior, the decree should provide for satisfaction first out of Picton, or at least for a judgment over in Superior's favor against Picton.

Respondent, Picton and Company's answer to the libel denied that the Tramp had been injured as alleged. Admitting that it had made a contract with Superior to remove damaged piling and timbers, it alleged that it had fully and completely performed its obligation. Alleging that it was not the owner of the alleged piling, or the ground on which it was driven, that it did not drive the piling and that except by contract with Superior, it was under no duty to remove it, it pleaded that some two years before the claimed collision it had fully performed its contract as agreed, that Superior had accepted it as completed, and that thereafter it was under no duty with respect to the piling and not liable, anyone who sustained damage from colliding with it.

To the cross-libel, it filed exceptions of no cause or right of action, and subject to these it answered as it had answered the libel.

The matters coming on for hearing, and fully heard, the district judge, on evidence fully supporting his findings, found: that, as alleged by it, the Tramp sank as the result of striking a submerged piling; and that the piling was one of those which, driven by respondent, Superior, as a part of the Creole platform Picton and Company had contracted to pull and remove. Rejecting the defense of respondent, Picton, that it was under no liability to libellants for the damage caused them, and finding that both Superior and Picton were liable, the court awarded judgment in solido against them both. Holding, however, that Picton had breached his contract, that the breach was the proximate cause of the damages sustained, and that Picton was liable to Superior for them, he gave judgment over in Superior's favor for the sums awarded libellants as damages, sums which the parties agree are a reasonable and proper measure of them. Both Picton and Superior have appealed, Superior's appeal being "from that part of the judgment only which makes an award against the respondent."

Here Picton and Superior as appellants make common cause against the appellees in respect of the question of the sufficiency of the proof to support the finding and judgment that the Tramp was sunk in collision with a submerged pile. They divide sharply on the questions arising on the judgment over in Superior's favor.

■ We agree with the district judge that the libellants made out a case of damages to the Tramp from collision with a pile driven by Superior and contracted to be, but not, removed by Picton. The circumstances testified to not only support but point so strongly that way as almost to compel the finding that the damage was so caused. We are in no doubt then that the judgment for libellant against the Superior, which was responsible for the placing of the obstruction there, must be affirmed. Nor are we in any that Picton is correct on its contention, that it owed no duty to libellant, that it was not liable to it in tort for the damages the collision caused, and that the judgment for libellant against it may not stand.

■■ As between Superior and Picton, however, on Superior's action over, the matter stands quite differently. For breach of its contract to pull and remove the piling Picton is liable to Superior for the sum awarded to libellant. The judgment over in favor of Superior was right and must be affirmed. We have not reached this conclusion without careful consideration of all the points Picton raises, both that as to whether the contract was mari-

time and the court had jurisdiction of the action over, and those urged on the merits. As to the action over, we think it plain that the contract was not only in part, but altogether, a maritime contract. In the form of a letter from Superior to Picton, accepted by Picton, the contract is brief, and we set it out in full in the margin.[1] Dealing, as it does, with work and services performed not on land or on structures projected out from land, but in the waters of the Gulf of Mexico, and having for its object the purpose (1) of salvaging from those waters all that was salvageable of the machinery and platform, and (2) of removing therefrom, so that they would no longer constitute a menace to navigation, all of the timber and piling which was not to be salvaged, it would be difficult to imagine a contract more completely maritime.[2] This is not a case, therefore, like Berwind-White Coal Mining Co. v. City of New York, 2 Cir., 135 F. 2d 443, where the subject matter of the contract is part maritime and part not, and it is necessary to determine whether the maritime subject matter of the contract can be separated from the non-maritime. Nor is it a case in which we are required to determine whether, as claimed by Superior, if the main part of the contract is maritime, the Court of Admiralty has jurisdiction over the whole of it,[3] or, as claimed by Picton, "the whole contract must be maritime and when the performance is partly maritime and partly terrene, a court of admiralty will not assume jurisdiction over it unless the non-maritime features be inconsiderable".[4] Neither are we required to determine whether, as contended

[1] Sept. 22, 1941

Gentlemen:

Your letter of September 4, 1941, has been received stating the basis and consideration upon which you would recover and salvage from the floor of the Gulf of Mexico the oil drilling rig and all equipment located and found by you including but not limited to, the schedule of property attached to your said letter of September 4, 1941, and to pull and remove all piling and timbers which were damaged and destroyed by lightning and fire at the site of the Creole Drilling Platform in the Gulf of Mexico, Cameron Parish, Louisiana, and that you would conduct the work of recovering, salvaging and transporting for the lump sum of $9,850.00.

The Superior Oil Company desires to accept your bid and offer as stated for the sum of $9,850.00, subject, however, to the following conditions:

1. That all of the salvaged material will be delivered by you without additional cost, either upon barge or dock at Lake Charles, Louisiana, as designated by this Company; provided that all piling and timbers recovered by you shall not be delivered to The Superior Oil Company but disposed of by you to such party or parties as you desire;

2. That weather permitting, work of salvaging said property shall begin at the earliest possible date and shall be diligently and in good faith prosecuted to completion so that all of the work of salvaging said property and delivering same as above provided shall be completed within thirty days from the date of your execution of this agreement.

In the event the above conditions modifying your said agreement of September 4, 1941, meet with your approval, will you kindly execute a duplicate copy of this letter in the space provided thereon, and return to us within five (5) days; otherwise, we shall be obligated to withdraw this counter-proposal.

/s/ The Superior Oil Company

D. M. Picton & Co., Inc. hereby agrees to all of the terms and conditions set forth in its letter to The Superior Oil Company of September 4, 1941, as modified by the foregoing letter agreement.

Executed this 24th day of September, 1941,

/s/ C. M. Picton & Co., Inc.

[2] Benedict on Admiralty, Sec. 66, p. 137; 2 C.J.S., Admiralty, Sec. 30, p. 90; Krauss Bros. Lmbr. Co. v. Dimon S. S. Corp., 1933, 290 U.S. 117, 54 S.Ct. 105, 78 L.Ed. 216; F. S. Royster Guano Co. v. W. E. Hedger Co., Inc., 2 Cir., 1931, 48 F.2d 86.

[3] Vol. 1, Benedict on Admiralty, Sec. 63, p. 128; Union Fish Co. v. Erickson, 9 Cir., 1916, 235 F. 385; 248 U.S. 308, 39 S.Ct. 112, 63 L.Ed. 261; The Thomas P. Beal, D.C., 295 F. 877; North Alaskan Salmon Co. v. Larsen, 9 Cir., 220 F. 93; Rosenthal, et al. v. The Louisiana, C.C.La., 37 F. 264-5; Grunvold, et al. v. Suryan, D.C., 12 F.Supp. 429.

[4] Luckenback v. Gano-Moore Co., D.C., 298 F. 343; The Pennsylvania, 2 Cir., 154 F. 9; The Ciano, D.C., 63 F.Supp. 892; Trans-Marine v. Fore Rivers, D.C., 28 F.2d 624.

by Superior, even if Picton's contract with Superior was not maritime, Superior had the right to implead Picton,[5] or as contended by Picton, it did not have.[6]

On the merits, while we entirely agree with Picton that it would not be liable to Superior for the damages caused by libellant if such damages were not in contemplation of the parties to the contract, we think that the contract, when read in the light of the conditions which it was drawn to meet, leaves in no doubt that they were. We think it inescapable that in making the contract the parties had in contemplation the obvious fact that when the platform was completely demolished and all the salvageable material was removed, if the piling and timbers were not, they would constitute a menace to navigation. We think it entirely clear that one of the prime objects of the contract, as evidenced by the precise language, "to pull and remove all piling and timbers which were damaged and destroyed by lightning and fire at the site of the Creole Drilling platform", was to make the place safe for navigation after the demolition work had been done.

Picton's contention, that the contract was a salvage contract and that there was nothing in it to draw its attention to the fact that a prime purpose of it was to remove menaces to navigation, might have force had the contract been closed on the basis of Superior's earlier letter of September 10, 1941. That letter makes no mention of pulling piling. It speaks entirely of recovery and salvage and the delivery by Picton of all the salvaged material without additional cost to Superior. The letter of September 22nd, the contract letter, however, is of entirely different purport. It makes the double purpose, to salvage and to remove obstructions to navigation, crystal clear. It does provide for the salvaging and delivery of salvageable material. But it provides, too, that Picton will pull and remove damaged piling and timber, and that the piling and timbers recovered by it shall not be delivered to Superior but shall be disposed of by Picton.

It is true that damages for breach of contract, where notice of special damages is not given, are limited to those reasonably within the contemplation of the parties, and that liability will not be imposed for damages which could not reasonably have been foreseen as a result of a breach. We think it plain, though, that reasonable persons, experienced as these were, could not have made the contract without having in mind that breach of it would leave a dangerous obstruction, for injury from which Superior would be liable. Many cases might be cited, it is sufficient to cite only a few,[7] to the point that the damages in this case are not special damages for which Picton may not be held liable to Superior, but general damages for which it may be.

Picton and Company was an experienced concern engaged for forty years in all kinds of marine work including putting in marine piling structures and taking them down. When it agreed in the contract with Superior to pull and remove all piling and timbers, if it did not know that the purpose of the contract was to remove hazards to navigation, which would probably cause loss, and that the contract was to prevent such loss, it is difficult to imagine what it believed the contract was for.

In holding Picton liable to Superior for the damages it was condemned to pay for the injury to the Tramp, we are not overlooking Picton's right to claim exoneration upon proof that Superior knew

---

5 Evans v. New York & P. S. S. Co., D.C., 163 F. 405, 407; The Thomas F. O'Brien, D.C., 26 F.2d 674; Rule 56 of Admiralty Rules; The Alert, D.C., 40 F. 836; 2 Benedict on Admiralty, Sec. 350, p. 538; Hartford Acc. & Indem. Co. v. S. P. Co., 273 U.S. 207, 47 S.Ct. 357, 71 L. Ed. 612; Keyser v. Blue Star S. S. Co., Ltd., 5 Cir., 91 F. 267; Soderberg v. Atlantic, 2 Cir., 19 F.2d 286.

6 Cases cited in note 4, supra.

7 Twachtman v. Connelly, 6 Cir., 106 F.2d 501; 25 C.J.S., Damages, Sec. 24, p. 481; Miller v. Robertson, 266 U.S. 243, 45 S.Ct. 73, 69 L.Ed. 265; Northwestern Steam Boiler & Mfg. Co. v. Great Lakes, 8 Cir., 181 F. 38; Missouri v. Morris, 8 Cir., 243 F. 481; Ring v. The Dimitrios Chandris, D.C., 43 F.Supp. 829.

that it had not completely performed the contract, and so knowing, had accepted what Picton did as full and complete performance. Picton does argue vigorously that just this occurred, that Superior, knowing that some of the piles remained unpulled, but satisfied with the performance of the contract, accepted it as fully performed, and Picton was thereby discharged from further performance and from liability for non-performance. The district judge, however, has, on evidence supporting the finding, found on these issues in favor of Superior. Picton admitted that the piling in question was one of those he contracted to remove and that he did not remove it. His excuse for not removing it is that he relied upon Superior to point out the piling to be removed and Superior did not do it, but this claim will not at all do. The contract contains no qualifying term, no limitation based on action or non-action of Superior in pointing out the pilings to be removed. The contract is general and absolute. It should have been performed as written.

It is true that, as it was required to do when the contract was performed, Superior paid the amount the contract called for, but payment of the contract price is not a defense to its breach. Nothing was said or done by Superior to mislead Picton as to whether all the piling had been removed. There is no proof that Superior knew that any of them remained unpulled, nor that anything was said or done which would constitute a waiver or discharge of Picton's obligations to remove them all assumed in the contract, and Superior had a right to rely on Picton's assurance that the contract had been performed.

Simply stated, the case, as proved and found by the district judge, is one of a liability arising against Superior for permitting piling it had driven to constitute a dangerous menace to navigation in the waters of the Gulf, and of a liability over in favor of Superior against Picton because of Picton's failure to do what Superior had contracted with it to do, to remove this menace. The judgment was right. It is affirmed.