**ROYAL INSURANCE COMPANY OF AMERICA, Plaintiff-Appellant,**

v.

**PIER 39 LIMITED PARTNERSHIP,** etc., et al., Defendants-Appellees.

No. 83–6298.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 10, 1984.

Decided July 24, 1984.

Edward Cohan, Seider & Cohan, Los Angeles, Cal., for plaintiff-appellant.

Ronald St. Marie, Ervin, Cohen & Jessup, Beverly Hills, Cal., for defendants-appellees.

Before GOODWIN, SNEED and ALARCON, Circuit Judges.

GOODWIN, Circuit Judge.

Royal appeals from the dismissal, for lack of admiralty jurisdiction, of this action for a declaratory judgment on two of its insurance policies. We affirm. The policies insured a floating breakwater and a floating dock, owned by Pier 39, that lay close to shore in San Francisco Bay. The dock, which was secured to the sea bottom and the shore, was used to moor vessels. The breakwater, which was secured to the sea bottom alone, sheltered the dock.

The breakwater broke free of its moorings in a storm and both it and the dock were damaged. Pier 39 claimed under the policy. Maintaining that Pier 39 had concealed material information relating to the breakwater and dock, Royal rescinded the policy and returned Pier 39's premium. Royal then brought this action for a declaratory judgment approving the rescission, invoking the district court's admiralty jurisdiction, 28 U.S.C. § 1333.

■ A contract is within admiralty jurisdiction if its subject matter is maritime. *Insurance Co. v. Dunham,* 78 U.S. (11 Wall.) 1, 26, 20 L.Ed. 90 (1871). The difficulty lies in determining what is "maritime." A generalized test is not very useful in deciding actual cases because many contracts with a pronounced maritime flavor have been held not within the jurisdiction. To repeat an oft-cited example, a contract to build a ship is not within admiralty jurisdiction although a contract to

repair a ship is. *Kossick v. United Fruit Co.,* 365 U.S. 731, 735, 81 S.Ct. 886, 889, 6 L.Ed.2d 56 (1961); *see also* G. Gilmore & C. Black, The Law of Admiralty 26–27 (2d ed. 1975). We therefore determine whether Royal's policies are within admiralty jurisdiction not by recourse to generalizations as to what is "maritime", but by looking at case law and comparing the policies with other contracts that have been held to be inside or outside the jurisdiction.

■ Policies of marine insurance clearly are within admiralty jurisdiction. *Insurance Co. v. Dunham; De Lovio v. Boit,* 7 F.Cas. 418 (No. 3776) (C.C.D.Mass.1815). Royal's policies at first glance look like typical marine insurance policies. One incorporates the standard American Institute Hull Clauses; the other is written on a standard protection and indemnity form.

■ But the resemblance of the policies to typical marine insurance is not enough to bring them within the jurisdiction. First, the American Institute Hull Clauses are incorporated only "as far as applicable." This circularity infects much of the language that makes the policies look like typical marine insurance. More important, the policy language shows only that it insures against marine risks. For an insurance policy to be within admiralty jurisdiction, the interests insured, and not simply the risks insured against, must be maritime. For example, a beach front home might be insured against damage from "perils of the sea," but insurance of this sort on real property almost certainly is outside admiralty jurisdiction. *See* 7A J. Moore and A. Pelaez, Moore's Federal Practice ¶ .255[1] at 3024 (2d ed. 1982). Likewise, if a wave sweeps an automobile covered by an all-risk insurance policy off a causeway, the policy probably would not be within the jurisdiction even though the insured-against risk that caused the loss was maritime. *Cf. Cookmeyer v. Louisiana Department of Highways,* 433 F.2d 386 (5th Cir.1970) (no admiralty tort jurisdiction over injuries suffered on pontoon bridge). Therefore, even if we accept that the policies cover marine risks, we still must de-

cide whether the breakwater and dock are maritime interests such that contracts relating to them will be within admiralty jurisdiction.[1]

Insurance on vessels is clearly within the jurisdiction, 7A J. Moore & A. Pelaez, *supra,* at 3021. If the breakwater and dock constitute vessels, the district court had jurisdiction over Royal's policies. We have found no cases that consider whether floating breakwaters and docks are vessels. Although some cases hold that a floating dry dock becomes a vessel when it is in transit from one place of employment to another, *e.g., United States v. Moran Towing & Transportation Co.,* 374 F.2d 656 (4th Cir.1967); *J.M.L. Trading Corp. v. Marine Salvage Corp.,* 501 F.Supp. 323 (E.D.N.Y.1980), the general rule is that stationary floating dry docks are not vessels. *Cope v. Vallette Dry Dock Co.,* 119 U.S. 625, 7 S.Ct. 336, 30 L.Ed. 501 (1887) (salvage case); *De Martino v. Bethlehem Steel Co.,* 164 F.2d 177 (1st Cir.1947) (tort case). Because the dock and breakwater were stationary, the general rule of *Cope* applies. If stationary floating dry docks are not vessels, we do not see why a stationary floating moorage dock or its protective breakwater should be.

Royal argues that even if the dock and breakwater are not vessels, they nonetheless are "marine objects", and that admiralty jurisdiction encompasses insurance on such objects. None of the cases that Royal cites present facts close enough to those in this case to be persuasive authority.

Royal offers *Edinburgh Assurance Co. v. R.L. Burns Corp.,* 669 F.2d 1259 (9th Cir.1982), *aff'g and rev'g* 479 F.Supp. 138 (C.D.Cal.1979), to support jurisdiction. *Edinburgh Assurance* involved insurance on a mobile drilling platform that at the time of the loss was attached to the ocean floor for drilling service. 479 F.Supp. at 141–144. The drilling rig is not very similar to the breakwater and dock in this case. The dock and breakwater lay close to shore and were similar in function to non-floating docks made of piles driven into the bottom. The drilling platform, on the other hand, was more like a vessel. The platform was built in Italy and lost off Mozambique; apparently it was designed to travel over long stretches of ocean. Moreover, because both the trial and appellate court failed to discuss the basis for admiralty jurisdiction, the case has little precedential weight on the question of jurisdiction.

Nor are the navigational lights that the breakwater and dock carried enough to place Royal's policies within the jurisdiction. Many land-based structures, including bridges, buildings, light houses, and towers, carry navigational lights or radio beacons, but Royal has cited no cases holding contracts relating to such structures within the jurisdiction.

The breakwater and dock resemble traditional wharves and docks, but cases holding contracts for wharfage within admiralty jurisdiction, *e.g., Ex Parte Easton,* 95 U.S. (5 Otto) 68, 24 L.Ed. 373 (1877), do not mean that Royal's policies are within the jurisdiction as well. Wharfage contracts are maritime if wharfage is provided to a specific vessel. This is consistent with cases holding contracts to provide other services or supplies to a vessel to be within the jurisdiction. *See generally* 7A J. Moore & A. Pelaez, *supra,* ¶ .230. If there is no connection to a specific vessel, however, contracts relating to wharves generally are not within admiralty jurisdiction. A contract to lease a wharf, for example, is

---

1. Our focus on the interests insured, rather than the risks insured against, may conflict with language in *Jeffcott v. Aetna Insurance Co.,* 129 F.2d 582 (2d Cir.), *cert. denied,* 317 U.S. 663, 63 S.Ct. 64, 87 L.Ed. 533 (1942). In that case, Jeffcott sued to recover on insurance policies for damage to his yacht. The yacht was laid up and out of commission at the time it was damaged. Relying on cases holding that contracts to laid-up ships are not within admiralty juris-

diction, the insurance company argued that its insurance policies also were not within the jurisdiction. In rejecting this argument, the court first suggested that any insurance against marine risks is within admiralty jurisdiction. But it went on to say that it would not extend what it called an "unreal" distinction between laid-up ships and those in active service, 129 F.2d at 586, suggesting that it found the insured yacht a maritime interest even though laid up.

not within the jurisdiction if the lease is not tied to services to a specific vessel; *Upper Steamboat Co. v. Blake,* 2 App.D.C. 51 (1893); *The James T. Furber,* 157 F. 126 (D.Me.1907); *see also The Cimbria,* 156 F. 378 (D.Mass.1907); *Transmarine Corp. v. Fore River Coal Co.,* 28 F.2d 624 (D.Mass. 1928); G. Robinson, Handbook of Admiralty Law 180 (1939); and a contract to build or sell a wharf probably is not within it either. *Upper Steamboat Co.,* 2 App.D.C. at 57 (dictum).

 In a few instances courts have held contracts relating to construction or maintenance of docks or wharves to be within the jurisdiction even though the contracts did not provide services to a specific vessel. *Berwind-White Coal Mining Co. v. City of New York,* 135 F.2d 443 (2d Cir.1943); *Eastern Massachusetts Street Railway Co. v. Transmarine Corp.,* 42 F.2d 58 (1st Cir.1930); *see also D.M. Picton & Co. v. Eastes,* 160 F.2d 189 (5th Cir.), *cert. denied,* 331 U.S. 859, 67 S.Ct. 1756, 91 L.Ed. 1866 (1947) (contract to pull drilling platform piles). But in each of these cases, a breach of the contract to construct or maintain the dock helped cause a tort clearly within the tort branch of admiralty jurisdiction. The district court in each case took jurisdiction over the contract only as a consequence of its jurisdiction over the tort. The cases do not support exercising jurisdiction over Royal's policies because no related tort has been alleged.

 Not only has Royal failed to show that its policies are like other contracts that have been held within admiralty jurisdiction, it has also failed to show that bringing them within the jurisdiction would serve the interests that lie behind the constitutional grant of admiralty jurisdiction. Because the breakwater and dock, unlike vessels, are immobile, an insurer dealing on the credit of the structures does not need the in rem process of admiralty to prevent their leaving port before he can enforce his claim. The breakwater and dock will not be subject to claims in distant ports, so their owner and insurer need neither admiralty's guarantee of a neutral federal forum to guard against the possible prejudice of local courts, nor its guarantee of a na-

tionwide uniform maritime law. Unlike seamen, neither owners nor insurers of floating breakwaters and docks are a favored class whose interests admiralty courts seek to protect. The only possible reason to bring Royal's policies within the jurisdiction is to ensure that the standard marine insurance clauses appearing in them receive the same interpretation that they would if they appeared in policies on vessels and cargo so as to avoid contaminating federal marine insurance law with inconsistent state precedents. But future admiralty courts construing insurance on vessels and cargos will easily be able to distinguish any inconsistent state court decisions regarding floating breakwaters and docks. Moreover, even a federal court sitting in admiralty might construe Royal's policies according to state law rather than federally-defined admiralty rule. *See Wilburn Boat Co. v. Fireman's Fund Insurance Co.,* 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955).

Affirmed.