**LUVI TRUCKING, INC.,**
**Plaintiff-Appellee,**

v.

**SEA–LAND SERVICE, INC.,**
**Defendant-Appellant.**

**LUVI TRUCKING, INC.,**
**Plaintiff-Appellant,**

v.

**SEA–LAND SERVICE, INC.,**
**Defendant-Appellee.**

Nos. 80–1351, 80–1380.

United States Court of Appeals,
First Circuit.

Argued Feb. 3, 1981.
Decided June 11, 1981.

Jorge M. Canellas, Hato Rey, P. R., with whom Jose Antonio Fuste, and Jimenez & Fuste, Hato Rey, P. R., were on brief, for Sea-Land Service, Inc.

Roberto J. Matos, Hato Rey, P. R., for Luvi Trucking, Inc.

Before CAMPBELL, BOWNES and BREYER, Circuit Judges.

BOWNES, Circuit Judge.

Sea-Land Service, Inc. (Sea-Land) appeals a district court judgment awarding $43,485.89 plus interest and costs to Luvi Trucking, Inc. (Luvi) for services rendered pursuant to an oral trucking contract. Luvi cross-appeals, challenging the amount awarded as inadequate. The key issue is the applicability of the six-month Puerto Rico statute of limitations. This requires the resolution of two subsidiary questions: (1) whether the contract is maritime and thus falls within admiralty jurisdiction; and, if not, (2) whether Sea-Land waived the statute of limitations.

Sea-Land is a common sea carrier engaged in international freight transporta-tion. Its operations include the shipment of freight which is destined for or originates in the Virgin Islands. Because Sea-Land does not service the Virgin Islands directly, all its Virgin Islands' freight is transshipped between two terminals at San Juan either from Sea-Lands' vessels to vessels of a connecting maritime carrier, if the cargo is going to the Virgin Islands, or vice versa, if the cargo is going in the opposite direction.

All freight carried by Sea-Land is transported in cargo vans each of which is the trailer portion of a semitrailer truck. When removed from a ship, the van can be hitched to a tractor and driven to the next point on its journey.

To accomplish the transshipment in San Juan, Sea-Land orally agreed in 1968 to pay Luvi a fixed rate of $40.00 per round trip for hauling the vans from Sea-Land's pier at the Puerto Nuevo terminal to the connecting carrier's pier at the Isla Grande terminal and back again upon the van's return from the Virgin Islands. Luvi provided the tractors and drivers. The rate was subsequently increased to $53.50. The contract covered only the haulage rate; it was not for any specified length of time and Sea-Land was not obligated to use Luvi's services.

According to Luvi, the round trip upon which the rate was based consisted of hauling a loaded van in one direction and hauling the same van back empty on its return. If Luvi hauled a loaded van in both directions, it was to get an additional fee to cover the additional costs of hauling a full rather than an empty van. Luvi claims that this additional fee was paid by Sea-Land until 1974 at which time Sea-Land. unilaterally discontinued paying it. Sea-Land maintains that it never paid the additional fee either before or after 1974 and that such a fee was never a part of the contract.

In October 1978, Luvi sued Sea-Land in the Superior Court of Puerto Rico, San Juan Part, for $55,171.59 plus interest and $10,000 for attorney's fees to recover the additional fees it claimed were due. Sea-

Land immediately petitioned for removal to the United States District Court for the District of Puerto Rico. The district court granted the removal petition noting on the docket that this was a cause "[i]n Admiralty—breach of maritime contract." A trial was conducted on the merits after which the court found for Luvi Trucking. Sea-Land appealed raising two issues: (1) whether the district court erred by not dismissing the case because the pertinent Puerto Rico statute of limitations had run; and (2) whether the court erred in basing its judgment for the plaintiff on exhibits improperly admitted into evidence. Luvi cross-appealed on one issue: whether the district court erred in awarding $43,485.89 instead of the $57,745.88 Luvi claims the evidence mandated.

■ The first question is whether this case falls under admiralty jurisdiction. If it does, then laches would be the appropriate doctrine for determining the timeliness of commencing suit. Laches is different than a statute of limitations; the question is not whether a fixed statutory period of time has run, but whether the delay in bringing suit was unreasonable and prejudicial to the other party.

Whether a contract action falls within admiralty jurisdiction depends upon the subject matter of the contract rather than the place where the contract was entered into or is to be performed. E. E. Jhirad & A. Sann, 1 Benedict on Admiralty § 182 at 11–5 (6th ed. 1974) (hereinafter cited as Benedict).

> Maritime character of the nature to attract admiralty jurisdiction does not attach to a contract merely because the services to be performed under the contract have reference to a ship, or to its business, or that the ship is the object of such services or that it has reference to navigable waters. In order that such character should attach, there must be present a direct and proximate juridical link between the contract and the operation of the ship, its navigation or its management afloat, taking into account the developing practices of world shipping, for the very basis of the constitutional grant of judicial power upon the United States in respect of matters maritime was to ensure a national uniformity of approach to world shipping.

*Id.* § 183 at 11–7–8.

Although we have found no recent cases directly on point, it has long been the rule that contracts involving cargo are maritime only to the extent the cargo is on a ship or being loaded on or off a ship. *The Moses Taylor*, 71 U.S. 411, 18 L.Ed. 397 (1866), was a case for breach of contract for passage from New York to San Francisco via Panama. One ship, the Illinois, carried the passenger from New York to Panama. He was then transported by railroad across Panama and a second ship, The Moses Taylor, carried him from Panama to San Francisco. It was during the third leg of the voyage that the alleged breach occurred. The passenger argued that the contract was not maritime because part of it was performed on land. The Supreme Court treated that portion of the voyage from Panama to San Francisco on board The Moses Taylor as a separate contract that was maritime. *The Ciano*, 63 F.Supp. 892 (E.D.Pa. 1945), involved a contract for the transportation of cargo from the Port of Cadiz, Spain, to Minneapolis. Suit was brought against the railway company for damage to the cargo which occurred during the trip between the Port of Philadelphia and Minneapolis. The court held that contracts for ocean carriage are maritime and contracts for land carriage are not, but if the contract involved both maritime and nonmaritime subjects and was divisible, then only the maritime portion of the contract could be heard in admiralty. In *Howmet Corp. v. Tokyo Shipping Co.*, 320 F.Supp. 975 (D.Del. 1971), the court held that contracts for the storage of cargo at voyage end are not maritime, while contracts for unloading cargo from vessels are. *Id.* at 977–78.

■ The contract here was to transship semitrailer cargo containers overland. The overland hauler, Luvi, never came in contact with a ship; the cargo vans were loaded and unloaded by someone else. Luvi

merely picked up the vans at one terminal and drove them to the other. There is no basis for characterizing the contract as maritime.

■ Luvi argues that if this contract was not maritime, then it was at least incidental to the underlying maritime contracts which Sea-Land had with its customers for the transportation of cargo from international ports to the Virgin Islands and back. But, even if it were conceded that the contract was incidental to a maritime contract, this does not justify admiralty jurisdiction. It is well established that a "contract, not maritime in itself, which is collateral to a maritime contract does not by reason of its relation to such contract acquire a maritime character and is not ordinarily cognizable in admiralty." 1 Benedict § 184 at 11–9. Furthermore, under the analysis in the *The Moses Taylor* and *Ciano* cases, this contract was easily separable from Sea-Land's maritime contracts and, therefore, admiralty jurisdiction could not be extended to it.

■ Luvi also argues that, because Sea-Land originally invoked admiralty jurisdiction when it removed the case to federal court, it cannot change its position and claim now that it is not a maritime case. Luvi has misread the petition for removal. Although paragraph (b) does use the words "quasi maritime contract" and "maritime contract," the jurisdictional basis invoked by the petition is 28 U.S.C. § 1332, diversity of citizenship, and 28 U.S.C. § 1337, which

gives jurisdiction to the district courts "of any civil action or proceeding arising under an Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies."[1] Nowhere in the petition is admiralty jurisdiction asserted under 28 U.S.C. § 1333.[2] Luvi's complaint does not mention maritime jurisdiction and Sea-Land's answer does not assert that this is an admiralty case. It was unfortunate that the district court carried this as an admiralty case, but that designation is not binding on Sea-Land or us. We rule that the case does not come within admiralty jurisdiction. Jurisdiction is, therefore, based solely on diversity of citizenship.

We now turn to the statute of limitations issue. In a diversity case, the applicable law is that of the forum state. P.R. Laws Ann. tit. 10, § 1909 (1978) provides in pertinent part: "The actions relating to the collection of transportation, freights, expenses inherent thereto, and the contributions of ordinary averages shall prescribe six months after the goods which gave rise thereto were delivered." Most, if not all, of the unpaid trucking charges were incurred in the period between 1974 and March 1978.[3] Luvi brought this action on October 6, 1978, more than seven months after the bulk of the payments were allegedly incurred. No reason has been advanced by Luvi, except waiver, why the statute does not bar this action as to all delivery charges prior to April 6, 1978.[4]

1. Sea-Land asserted that to decide this action the court must construe the terms of the United States Shipping Act, 46 U.S.C. §§ 801 *et seq.*, the United States Harter Act, 46 U.S.C. §§ 190 *et seq.*, the United States Carriage of Goods by Sea Act, 46 U.S.C. §§ 1300 *et seq.*, and other federal laws regulating maritime transportation. We do not find any act of Congress regulating commerce to be involved in this case. Therefore, jurisdiction cannot be maintained under 28 U.S.C. § 1337.

2. 28 U.S.C. § 1333 provides in pertinent part:
The district courts shall have original jurisdiction, exclusive of the courts of the States, of:
(1) Any civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled.

3. It is not clear from the record whether Luvi introduced evidence of unpaid charges between April and October of 1978.

4. In its reply memorandum to Sea-Land's motion for summary judgment, Luvi argued that P.R.Laws Ann. tit. 10, § 1909 requires only that a demand for payment be made within the six-month period. No cases or authority were cited for this interpretation and we have found none. We note that P.R.Laws Ann. tit. 10, § 1901 states: "The periods fixed in this Code for bringing the actions arising from commercial contracts, cannot be extended and are without recourse." Section 1903 of tit. 10 states in pertinent part: "Prescription shall be interrupted by suit or any judicial proceeding brought against the debtor, by the acknowledgement of the obligations, or by the renewal of the instrument on which the right of the

In order to understand the waiver question, a short history of the case is necessary. In its answer Sea-Land did not plead the statute of limitations. *See* Fed.R. Civ.P. 8(c). Sea-Land subsequently moved for summary judgment, one of the grounds, *inter alia*,[5] was that the statute of limitations had run. In its memorandum opposing summary judgment, Luvi did not claim that Sea-Land had waived the statute by failing to plead it affirmatively; it argued its applicability solely on the merits. *See* n.5. The district court denied the motion for summary judgment and held that the action was not time-barred as a matter of law. In the agreed statement of contested issues of law filed by the parties, the first issue stated was the applicability of the statute of limitations. The amended final pretrial order which was issued two and one-half months after the order denying the motion for summary judgment specifically stated that one of the defenses asserted was the statute of limitations. At the trial, after plaintiff rested, defense counsel moved for a nonsuit on the ground of the statute of limitations. The trial judge took the matter under consideration. His opinion, however, which he dictated orally from the bench, does not mention the statute at all. We conclude that this issue was tried by implied consent of both parties and thus not waived. *See* Fed.R.Civ.P. 15(b).[6]

The district court's finding that Sea-Land had agreed to pay an additional fee for hauling a loaded van both from and to Sea-Land's pier is affirmed. We rule that the Puerto Rico statute of limitations, P.R. Laws Ann. tit. 10, § 1909, bars any recovery by Luvi prior to April 10, 1978. Since we are unable to determine from the record whether Luvi proved that there were fees owed between April 10, 1978, and the date of suit, October 10, 1978, the case must be remanded for such determination. Our rul-

ing makes it unnecessary to reach the other issues raised by the parties.

*Reversed and remanded.*

---

creditor is based." We have been unable to find anything in the record suggesting an "acknowledgment of the obligations" by Sea-Land.

5. Sea-Land has not appealed on the other grounds.

6. Fed.R.Civ.P. 15(b) provides in pertinent part: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."