882 F.2d 1435
 1990 A.M.C. 288, 58 USLW 2141, 14
Fed.R.Serv.3d 648
 Tyrone SIMON; Artis Moss, Plaintiffs-Appellees,
v.
INTERCONTINENTAL TRANSPORT (ICT) B.V., et al., Defendants,
and
Marine Terminals Corporation, Claimant-Appellant.
Tyrone SIMON; Artis Moss, Plaintiffs-Appellees,
v.
MARINE TERMINALS CORPORATION; Majestic Insurance Company;
a California corporation; Mission Insurance Company, a
California corporation; and Other Unknown Agents of
Majestic Insurance Company, Mission Insurance Company, and
Marine Terminals Corporation, Defendants-Appellants.
 Nos. 87-15087, 88-2744.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 15, 1989.
Decided Aug. 16, 1989.
 
 B. James Finnegan and Katherine F. Theofel, Finnegan & Marks, a Professional Corp., San Francisco, Cal., for defendants-appellants and claimant-appellant.
 William E. Weiss, Livingston & Weiss, a Professional Corp., San Francisco, Cal., for plaintiffs-appellees.
 Appeal from the United States District Court for the Northern District of California.
 Before HUG, HALL and O'SCANNLAIN, Circuit Judges.
 HUG, Circuit Judge:
 
 
 1
 We face two consolidated appeals arising from litigation that began after two longshore workers sustained injuries in the course of their employment and began receiving compensation payments from their employing stevedore under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. Secs. 901-950 (1982 & Supp. V 1987). The first appeal arises from a negligence action that the longshore workers filed against the owner of the ship where their injuries occurred. The stevedore, which participated in the action as a lien claimant, appeals an order by the district court imposing costs against the stevedore under Fed.R.Civ.P. 68. The second appeal arises from an action filed by the longshore workers against the stevedore and its liability insurers for bad faith breach of contract resulting from the stevedore's participation in the negligence action. The stevedore and the insurers appeal the district court's order denying their motion to dismiss the action for lack of subject matter jurisdiction or for failure to state a claim. These appeals require that we decide whether the requirements of Rule 68 were satisfied, and whether the bad faith breach of contract claim lies within the admiralty jurisdiction of federal district courts, 28 U.S.C. Sec. 1333 (1982). We conclude that Rule 68 was unmet and that admiralty jurisdiction is lacking. Consequently, we reverse both orders of the district court.
 
 BACKGROUND
 
 2
 Tyrone Simon and Artis Moss were employed as longshore workers by Marine Terminals Corporation ("MTC"), a stevedoring company in the business of loading and unloading ships in the San Francisco Bay Area. While working aboard the Incotrans Spirit in the Port of Oakland, Simon and Moss sustained injuries when the ship's ladder gave way causing Simon to fall onto Moss, who stood on the deck below. Because their injuries occurred in the course of maritime employment with a stevedore, Simon and Moss became entitled to compensation payments from MTC under the LHWCA. See Bloomer v. Liberty Mut. Ins. Co., 445 U.S. 74, 74-75, 100 S.Ct. 925, 926, 63 L.Ed.2d 215 (1980). These payments, like payments under similar workers' compensation systems, are calibrated according to fixed schedules that vary with the severity, type, and duration of a covered injury. See 33 U.S.C. Secs. 908, 909 (1982 & Supp. V 1987). MTC's liability for these payments became its exclusive liability for the injuries Simon and Moss suffered. Id. Sec. 905 (Supp. V 1987).
 
 
 3
 After Simon and Moss began receiving the payments, they each filed a negligence action against Intercontinental Transport (ICT), B.V. ("ICT"), the owner and operator of the Incotrans Spirit. These actions were consolidated. Although Simon and Moss did not name MTC as a party to the actions, the rights and duties of the LHWCA enabled MTC to enter the dispute. The LHWCA first subjected Simon's and Moss' potential net recoveries from ICT to liens in favor of MTC for the amount of compensation that MTC paid each of them. See Bloomer, 445 U.S. at 75, 100 S.Ct. at 926. The LHWCA also gave MTC a potential interest in the excess of the net recoveries over the liens because a compensating stevedore may use such excess as an offsetting credit against liability for future compensation payments to the injured longshore worker. See 33 U.S.C. Sec. 933(f) (Supp. V 1987). As a means of protecting these interests, the LHWCA gave MTC some control over the discretion Simon and Moss had to settle with ICT before trial: Simon and Moss could not settle without losing their rights to future compensation benefits unless MTC gave advance written consent to the settlement. See id. Sec. 933(g).
 
 
 4
 Simon and Moss entered into settlement discussions with ICT under the supervision of the district court. MTC participated in these discussions at the parties' invitation. Ultimately, ICT offered to settle with Simon for $325,000 plus costs and with Moss for $15,000 plus costs. Simon and Moss wanted to settle, but MTC withheld its consent. MTC then formally appeared in the action by filing a notice and request for allowance of a lien in the amount of $106,428.99 against Simon's net recovery and $3,434.45 against Moss' net recovery.
 
 
 5
 After the appearance, Simon served MTC with a written offer of judgment pursuant to Fed.R.Civ.P. 68. The offer provided that Simon would consent to suffer a judgment of $101,000 with costs on the lien claim if MTC would consent to Simon settling with ICT for $325,000. Moss did not serve an offer of judgment. MTC rejected Simon's offer of judgment, the case proceeded to trial, and the jury awarded $300,000 to Simon and $11,000 to Moss. The district court entered judgment on the verdict for Simon and for Moss and on MTC's lien claim in its entirety. Simon and Moss then moved for costs against MTC under Fed.R.Civ.P. 68. The district court concluded the requirements of the rule were satisfied and ordered MTC to pay $4,390.18 in costs to Simon and Moss.
 
 
 6
 Shortly before entry of judgment in the negligence action, Simon and Moss filed in federal district court a second lawsuit naming as defendants MTC; an MTC employee, Alan Landstrom; and two insurance carriers for MTC, Majestic Insurance Company ("Majestic") and Mission Insurance Company ("Mission"). As amended, Simon and Moss' complaint presents a single claim against all defendants. According to the complaint, Mission and Majestic insured MTC against loss and liability arising from the operation of a stevedoring business, including liability for compensation payments under the LHWCA. Pursuant to agency and service agreements with both Mission and Majestic, MTC acted as the adjuster of its employees' claims for compensation. Simon and Moss allege that MTC's withholding of consent to the settlement offer by ICT worked a bad faith breach of these insurance policies and service agreements. Simon and Moss also assert a right to sue for the breach as third party beneficiaries.
 
 
 7
 The defendants moved to dismiss the amended complaint for failure to state a claim or for lack of subject matter jurisdiction. The district court denied the motion as to MTC, Mission, and Majestic, finding that the bad faith breach of contract claim fell within the court's admiralty jurisdiction and that the amended complaint stated a claim against all defendants except Alan Landstrom.
 
 
 8
 In the first appeal, MTC seeks reversal of the order imposing costs under Fed.R.Civ.P. 68. We have jurisdiction to review that order under 28 U.S.C. Sec. 1291 (1982). In the second appeal, MTC, Majestic, and Mission seek reversal of the order denying their motion to dismiss the amended complaint. The district court certified that order as appropriate for immediate interlocutory appeal under 28 U.S.C. Sec. 1292(b) (1982), and we granted the petition for review. We address each order in turn.
 
 DISCUSSION
 I. The Order Imposing Rule 68 Costs
 
 9
 MTC argues under a variety of theories that Rule 68 cannot apply to lien claimants under the LHWCA or, in the alternative, that the requirements of the rule are unsatisfied in this case. Because we reverse on the ground that Rule 68 is unsatisfied, we do not reach MTC's other arguments.
 
 
 10
 The case law of this circuit has yet to delineate the proper standard for reviewing district court decisions applying Rule 68. We have held, however, that the mandatory cast of the rule "leaves no room for district court discretion." Liberty Mut. Ins. Co. v. EEOC, 691 F.2d 438, 442 (9th Cir.1982). When a proper Rule 68 offer is made and the other requirements of the rule are met, the district court must award costs measured from the service of the offer. Id. The mandatory cost-shifting feature of Rule 68 resembles the requirement under Fed.R.Civ.P. 11 that courts impose sanctions whenever the filing of a paper violates the standard of that rule. See Golden Eagle Distrib. Corp. v. Burroughs Corp., 801 F.2d 1531, 1538 (9th Cir.1986). The absence of district court discretion to withhold sanctions led to our adoption of the de novo standard for reviewing whether specific conduct conforms to the requirements of Rule 11 and the clearly erroneous standard for reviewing disputed factual findings that set the precise contours of conduct. Id. We believe a similar analytical framework should apply to Rule 68. Thus, we review de novo whether Simon's offer of judgment, MTC's rejection of the offer, and the judgment following the trial satisfied the requirements of Rule 68. We review any disputed factual findings concerning those events for clear error.
 
 
 11
 Rule 68 of the Federal Rules of Civil Procedure permits a party defending against a claim to serve on the adverse party an offer of judgment any time more than 10 days before trial. The offer must set out the money or property or the effect of the adverse judgment to which the defending party is willing to accede. Fed.R.Civ.P. 68. If the adverse party rejects the offer and fails after trial to obtain a judgment more favorable than the offer, Rule 68 requires that party to pay the costs incurred in litigating the case from the making of the offer. Id.
 
 
 12
 MTC contends that the requirements of Rule 68 were not satisfied because the judgment actually awarded on the lien was more favorable to MTC than the written offer of judgment would have been. We agree. The district court's contrary conclusion rests on two sets of factual findings--one set is irrelevant to the Rule 68 analysis in this case; the other contains clear error.
 
 
 13
 The district court began its comparison between the actual judgment and Simon's offer of judgment by noting that ICT offered Simon $25,000 more to settle his negligence claim than the jury awarded him.[1] The court's reference to Simon's net recovery appears to reflect a belief that the benefit MTC derived from the entire judgment in the action and not solely from MTC's judgment portion on the lien as to Simon provided the proper point of comparison under Rule 68. Under this view, the offered judgment would have been more favorable to MTC than was the entire awarded judgment because acceptance of the offered judgment would have allowed Simon to settle with ICT and enhance both his net recovery and the credit potentially available to MTC for offsetting future compensation liability under the LHWCA. Although we acknowledge that increasing Simon's net recovery would have benefited MTC, that recovery and its potential for offsetting credit have no place in the Rule 68 calculation.
 
 
 14
 Rule 68, by its terms, applies to offers made by "a party defending against a claim." Fed.R.Civ.P. 68. The rule has no application to offers by a party who brings a claim. Delta Air Lines, Inc. v. August, 450 U.S. 346, 350, 101 S.Ct. 1146, 1149, 67 L.Ed.2d 287 (1981). Simon, the plaintiff as to the negligence claim against ICT, had no basis for making an effective offer of judgment on that claim. Simon was a defending party and a proper Rule 68 offeror only as to MTC's lien claim. As a result, the only relevant figures for comparison under the rule were the judgment amounts offered and awarded on MTC's lien claim against Simon's net recovery. Because that lien represented only past compensation payments to Simon, the size of MTC's potential offsetting credit against liability for future payments was irrelevant to the Rule 68 comparison.
 
 
 15
 The district court also concluded that MTC obtained a judgment no more favorable than Simon's offer of judgment because both the offered and the actual judgments covered MTC's entire lien against Simon's net recovery. The court's finding, however, does not reconcile with Simon's written offer of judgment and with the judgment amount MTC actually received on its lien. In the offer of judgment, Simon states his willingness to accede to a judgment of $101,000 on MTC's lien. But after trial, MTC received judgment on the lien as to Simon for $106,428.99, or $5,428.99 more than Simon's written offer. Thus, the finding that Simon's offer of judgment equaled the amount MTC recovered on its lien constitutes clear error and cannot support the order imposing costs under Rule 68. Because the offer of judgment was inferior to the judgment MTC actually obtained, we conclude that the requirements of the rule are unmet.
 
 
 16
 Simon and Moss contend MTC should be estopped from relying on the discrepancy between the judgment amounts that were offered and awarded on the lien because MTC furnished Simon with the figure of $101,000, and Simon made the offer of judgment without knowing MTC would claim a higher amount. But even if MTC initially furnished Simon with an inaccurately low figure, the filing of MTC's formal notice and request for allowance of lien forecloses any possible justification for Simon's reliance on the inaccuracy. MTC's notice requests the precise amount MTC was awarded on Simon's net recovery. MTC served this notice by mail on March 27, 1987. Simon did not serve his written offer of judgment with the inaccurate figure until April 2, 1987. Moreover, Simon could have amended his offer of judgment any time up to ten days before trial. See Fed.R.Civ.P. 68 (offer of judgment may be made "any time more than 10 days before the trial begins;" subsequent offers may be made if the original is not accepted). When Simon served his offer of judgment, trial was set for April 21. Thus, Simon had until April 11, or 15 days from the service of MTC's notice, to discover the actual lien amount and to amend the offer of judgment. Simon's failure to take prudent and available steps to remedy the inaccuracy in the offer precludes any basis for estoppel.
 
 II. The Order Denying the Motion to Dismiss
 
 17
 MTC, Majestic, and Mission (the "MTC parties") contend that the district court lacks subject matter jurisdiction over Simon and Moss' action for bad faith breach of contract or, in the alternative, that the LHWCA bars the action. We need not address the scope of the LHWCA's preemptive force because we conclude that jurisdiction is lacking. Our review is de novo. Sample v. Johnson, 771 F.2d 1335, 1344 (9th Cir.1985), cert. denied, 475 U.S. 1019, 106 S.Ct. 1206, 89 L.Ed.2d 319 (1986).
 
 
 18
 Simon and Moss' claim does not arise under the laws of the United States, and the parties do not enjoy diversity of citizenship; hence, admiralty is the sole jurisdictional basis at issue in this second appeal. Federal district courts have exclusive original jurisdiction over civil cases arising in admiralty. 28 U.S.C. Sec. 1333 (1982). Two distinct tests have evolved for determining the reach of this jurisdictional grant: a locality test for tort claims and a subject matter test for contract claims. Victory Carriers, Inc. v. Law, 404 U.S. 202, 205-06, 92 S.Ct. 418, 421-22, 30 L.Ed.2d 383 (1971). The claim by Simon and Moss for bad faith breach of a duty imposed under a contract bears some of the markings of both tort and contract claims. On its face, however, the claim fails the test for maritime torts because any tort arising from MTC's refusal to consent to the settlement proposed by ICT occurred on land rather than over navigable water.[2] We therefore turn to the test for contract claims.
 
 
 19
 Admiralty jurisdiction extends to claims that arise from contract if the subject matter of the contract is maritime in nature. North Pac. S.S. Co. v. Hall Bros. Marine Ry. & Shipbuilding Co., 249 U.S. 119, 125, 39 S.Ct. 221, 222, 63 L.Ed. 510 (1919); Hinkins S.S. Agency, Inc. v. Freighters, Inc., 498 F.2d 411, 412 (9th Cir.1974). An abstraction of the boundaries of this contract jurisdiction sufficient to offer concrete guidance in its application has failed to emerge. See Royal Ins. Co. of Am. v. Pier 39 Ltd. Partnership, 738 F.2d 1035, 1036 (9th Cir.1984). Instead, precedent has identified sets of commonly recurring contracts that are excluded or included in the jurisdiction. Kossick v. United Fruit Co., 365 U.S. 731, 735, 81 S.Ct. 886, 890, 6 L.Ed.2d 56 (1961). The contracts forming the basis of Simon and Moss' claim are the insurance policies by Mission and Majestic and the service agreements obligating MTC to adjust its own employees' compensation claims. Our task is to compare these contracts with the established sets of maritime and nonmaritime contracts and to consider whether the interests underlying admiralty jurisdiction favor including the present action within the jurisdiction. See Royal Ins., 738 F.2d at 1036, 1038; Kennedy v. H & M Landing, Inc., 529 F.2d 987, 988-89 (9th Cir.1976) (per curiam).
 
 
 20
 Marine insurance policies covering vessels engaged in maritime commerce and navigation have long been established as maritime contracts. The New England Marine Ins. Co. v. Dunham, 78 U.S. (11 Wall.) 1, 20 L.Ed. 90 (1870). Whether policies insuring other activities or property with a maritime flavor qualify as maritime contracts depends upon the maritime nature of the interests that are insured as opposed to the nature of the covered risks. Royal Ins., 738 F.2d at 1036-37 & n. 1. For example, insurance on a beachfront house against damage from waves or high tides would not constitute a maritime contract; although such coverage would encompass risks from the sea, the insured interest--real property on shore--would be nonmaritime in nature. Id.
 
 
 21
 Simon and Moss contend that the descriptions of coverage in MTC's policies establish the maritime nature of the insured interests in this case. In particular, they emphasize that the policies expressly cover loss or damage to cargo or ships (including ships owned, managed, or chartered by MTC) arising from the operation of MTC's stevedoring business. We agree that traditional maritime interests or activities are included within the scope of this coverage. For instance, the coverage would extend to loss arising from the operation of a ship under a contract of charter (charter party) with MTC or from MTC's performance of a contract for stevedoring with a particular vessel. Charter parties and stevedoring contracts are clearly maritime in nature. Armour & Co. v. Ft. Morgan S.S. Co., 270 U.S. 253, 259, 46 S.Ct. 212, 214, 70 L.Ed. 571 (1926) (charter party); American Stevedores, Inc. v. Porello, 330 U.S. 446, 456, 67 S.Ct. 847, 852, 91 L.Ed. 1011 (1947) (stevedoring contract); Indemnity Ins. Co. of N. Am. v. California Stevedore & Ballast Co., 307 F.2d 513, 516 (9th Cir.1962) (same). But the scope of coverage in MTC's insurance policies also extends to numerous activities and interests that are nonmaritime in nature. For example, the coverage extends to losses arising from leases of piers. As a general rule, the lease of a pier or wharf is not a maritime contract unless the lease is tied to the provision of wharfage for a specific vessel. Royal Ins., 738 F.2d at 1037-38. Moreover, the coverage in MTC's policies extends to any loss or damage to person or property arising from the operation of MTC's stevedoring business. Such coverage potentially encompasses myriad injuries from business activity not directly connected to the servicing of any particular ship or any other maritime activity. As a result, the insured interests under MTC's policies comprise a mixture of nonmaritime and maritime interests and activities.
 
 
 22
 Ordinarily, a contract must be wholly maritime in nature to be cognizable in admiralty. Home Ins. Co. v. Merchants' Transp. Co., 16 F.2d 372, 374 (9th Cir.1926); E.S. Binnings, Inc. v. M/V Saudi Riyadh, 815 F.2d 660, 665 (11th Cir.1987); Friedell, 1 Benedict on Admiralty Sec. 183 (7th ed. 1988). Two exceptions to this general rule have developed. First, admiralty may take jurisdiction of an entire contract if the nonmaritime obligations are merely incidental to the primary maritime nature of the contract. Union Fish Co. v. Erickson, 235 F. 385, 386-87 (9th Cir.1916), aff'd, 248 U.S. 308, 39 S.Ct. 112, 63 L.Ed. 261 (1919); Kuehne & Nagel (AG & CO) v. Geosource, Inc., 874 F.2d 283, 290 (5th Cir.1989). Second, if the nonmaritime obligations are substantial, admiralty may take jurisdiction over any maritime obligations that can be severed from the nonmaritime obligations and separately adjudicated without prejudice to the parties. Natasha, Inc. v. Evita Marine Charters, Inc., 763 F.2d 468, 470 (1st Cir.1985); Kuehne & Nagel, 874 F.2d at 290; Flota Maritima Browning de Cuba S.A. v. Snobl, 363 F.2d 733, 735-36 (4th Cir.), cert. denied, 385 U.S. 837, 87 S.Ct. 82, 17 L.Ed.2d 71 (1966). The first exception is inapplicable to the present case because the nonmaritime interests insured under MTC's policies defy characterization as mere incidentals. Those interests help form the core of risks that Mission and Majestic have undertaken in insuring MTC's business. The second exception is also inapplicable for we conclude that the insured interests forming the basis of the amended complaint are nonmaritime in nature and beyond admiralty jurisdiction even if severable.
 
 
 23
 The insurance coverage of MTC's liability for compensation under the LHWCA forms the basis of the amended complaint. Stevedoring under contract with a particular vessel probably constitutes the closest traditional maritime interest or activity to which such liability relates. Indeed, under the terms of the LHWCA, MTC's potential for incurring compensation liability arises because MTC engages in stevedoring under contract with vessels as part of its business. But the conceptual proximity of stevedoring to liability under the LHWCA does not decide the maritime or nonmaritime nature of the coverage at issue. Stevedoring contracts are maritime because of their connection to the sea and to maritime commerce. See Atlantic Transp. Co. v. Imbrovek, 234 U.S. 52, 60-63, 34 S.Ct. 733, 734-36, 58 L.Ed. 1208 (1914). Whether insurance against liability under the LHWCA is maritime must also depend on the relationship of such coverage to maritime commerce and the sea.
 
 
 24
 Admiralty generally denies jurisdiction over contracts involving obligations or services that are merely preliminary to maritime contracts. E.S. Binnings, 815 F.2d at 663 (citing 7A J. Moore, Moore's Federal Practice, p .250 at 3002 & n. 2 (2d ed. 1985)). Although such contracts may relate indirectly to ships and their navigation in commerce, they bear no significant difference from shoreside services completely unrelated to the operation or navigation of ships. Id.; see also Clinton v. International Org. of Masters, Mates & Pilots, Inc., 254 F.2d 370, 372 (9th Cir.1958). In Clinton, we applied this principle to a contract between the local union and its member seamen for the allocation of available jobs on board ships. Id. at 371-72. Although a seaman's employment contract with a vessel is maritime in nature, we held admiralty jurisdiction to be lacking because the allocation contract had no direct relation to a particular ship and only indirect relation to commerce on the sea. Id. We found no significant difference between the allocation contract and other contracts in local labor unions entered into and wholly performed in land-based industry. Id.
 
 
 25
 MTC's insurance against liability under the LHWCA does not differ significantly from insurance or other risk allocating systems in which numerous land-based employers participate to cover their liability under state worker's compensation statutes. Furthermore, MTC's insurance bears no relationship to any particular vessel. The insurance is only indirectly connected with maritime commerce because of the relationship between MTC's potential compensation liability and its performance of stevedoring contracts. Such a relationship is far too tenuous to justify classifying the insurance for compensation liability as a maritime obligation or interest sufficient to bring the policies and their related servicing agreements within the pale of admiralty jurisdiction.
 
 
 26
 Seeking to avert the foregoing analysis, Simon and Moss contend that Congress intended admiralty jurisdiction to extend to claims arising from insurance coverage for compensation liability under the LHWCA. Simon and Moss maintain that such an intent was expressed in Congress' use of its maritime power to enact the LHWCA, which requires employing stevedores to insure against compensation liability.[3] We are not persuaded. Congress' use of its maritime power to create the rights and obligations of the LHWCA does not automatically confer admiralty jurisdiction on every claim that in any way relates to those rights and obligations. Sample, 771 F.2d at 1344. Where, as here, the LHWCA does not confer federal subject matter jurisdiction on a claim, the traditional tests for maritime torts and maritime contracts determine whether admiralty jurisdiction is available. See id. (no admiralty jurisdiction over claim against stevedore for wrongful controversion of an LHWCA compensation claim where claim failed traditional test for maritime torts).
 
 
 27
 Simon and Moss also argue that congressional intent to expand admiralty jurisdiction to cover their claim is expressed in the legislative history surrounding the LHWCA's enactment in 1927 and its amendment in 1972. LHWCA, ch. 509, 44 Stat. 1424 (1927); LHWCA Amendments of 1972, Pub.L. No. 92-576. They place special emphasis on two oblique passages regarding the relationship of the act's coverage to admiralty claims and maritime activities. The first passage states that an employing stevedore's liability for compensation under the LHWCA is a substitute for its liability "at law or in admiralty." 68 Cong.Rec. 5404 (1927). Because the LHWCA provides a system of administrative review in the Department of Labor to resolve disputes over compensation claims, this substitution of remedies has the practical effect of shrinking the number of cases over which district courts may exercise original jurisdiction in admiralty. See 33 U.S.C. Secs. 919-921 (1982 & Supp. V 1987). But the substitution simply implies nothing about congressional intent to enlarge admiralty jurisdiction to include claims based on insurance coverage for an employer's compensation liability under the LHWCA.
 
 
 28
 The second passage describes longshore workers and other employees who may qualify for benefits under the act as engaging in "maritime employment." 92 Cong. Rec. 36,381 (1972). This reference to the maritime nature of the unloading and loading of a ship's cargo is perfectly consistent with, and adds nothing, to the analysis set out above. The mere fact that stevedoring is a maritime activity and that a stevedoring contract is a maritime contract does not indicate that a contract of insurance covering a stevedore's liability for compensation under the LHWCA is also a maritime contract.
 
 
 29
 Our determination that Simon and Moss' claim for bad faith breach of contract lies beyond admiralty jurisdiction does not conflict with the interests supporting the constitutional and statutory grant of that jurisdiction. Simon and Moss have no need of admiralty's in rem process to preclude a ship from leaving port and escaping the reach of local process because defendants are all shoreside entities. See Kennedy, 529 F.2d at 988-89. Additionally, all of the parties are citizens of the same state, and the insurance policies and related service agreements contemplate performance in the same state. As a result, the parties to those contracts have no need of admiralty's neutral federal forum and uniform body of national maritime law to protect against the possible prejudice of local courts or the unanticipated variations of state law in a distant tribunal. See Royal Ins., 738 F.2d at 1038. Finally, given the central involvement of insurance in the dispute, state law rather than the principles of interpretation for maritime contracts is the more appropriate source of law to apply. Cf. Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 75 S.Ct. 368, 99 L.Ed. 337 (1955) (federal courts in admiralty should look to state law when interpreting a maritime insurance policy).
 
 CONCLUSION
 
 30
 We reverse the order imposing costs against MTC under Fed.R.Civ.P. 68. The requirements of Rule 68 are unmet because MTC's judgment award on the lien against Simon's net recovery exceeded the judgment offer by Simon. We also reverse the order denying the motion to dismiss the bad faith breach of contract claim as to MTC, Majestic, and Mission. The contractual obligations at issue in that claim are nonmaritime in nature and therefore incapable of supporting jurisdiction in admiralty under 28 U.S.C. Sec. 1333 (1982).
 
 
 31
 REVERSED.
 
 
 
 [1]
 The court also noted that Moss received $4,000 less from the jury than ICT had offered to settle. Moss' recovery has no relevance to the Rule 68 issue because Simon was the only party who served a written offer of judgment
 
 
 [2]
 Victory Carriers confirmed the historical distinction that admiralty jurisdiction does not extend to torts committed on land. 404 U.S. at 202, 92 S.Ct. at 418. It is confined to torts on or over navigable waters. In its next term, the Supreme Court further confined admiralty jurisdiction in holding that it is insufficient for admiralty jurisdiction to establish that the tort was committed on or over navigable waters, but that it must also be shown that the wrong bears a significant relationship to traditional maritime activity. Executive Jet Aviation, Inc. v. City of Cleveland, Ohio, 409 U.S. 249, 93 S.Ct. 493, 34 L.Ed.2d 454 (1972)
 
 
 [3]
 Contrary to Simon and Moss' assertion, the LHWCA does not require an employing stevedore to insure against compensation liability. Rather, the act requires the stevedore to secure payment of compensation. 33 U.S.C. Sec. 932(a) (Supp. V 1987). A stevedore may meet the security requirement either by insuring or by furnishing proof of ability to pay compensation directly. Id