**BERKSHIRE FASHIONS, INC., Plaintiff**

v.

**The M.V. HAKUSAN II, Canopus Shipholding, S.A., Nippon Yusen Kaisha, Showa Kaiun, Air–Sea Transport, Inc., Orient Star Shipping (USA) Inc., YFK Cargo Service, Inc., Global Traffic Systems, J.O.V. Enterprises, Inc. and Carbro Construction Corp. and Global Traffic Systems and Jo–Lin Hauling, Inc., Defendants/Third–Party Plaintiffs**

v.

**CITY OF LINDEN, NEW JERSEY and Carbro Construction Corp., Third–Party Defendants.**

**Civ. A. No. 88–5493.**

United States District Court, D. New Jersey.

June 25, 1990.

---

**304**

George W. Wright, Kroll & Tract, Newark, N.J., for plaintiff.

Raymond M. Brown, Brown, Brown & Kologi, Newark, N.J., and Soller, Singer & Horn, New York City, for defendant Air-Sea Transport, Inc.

DeOrchis & Partners, Union, N.J., for defendants Orient Star Shipping and Orient Star Shipping (U.S.A.), Inc.

John M. Bowens, Gennett and Kallman, Roseland, N.J., for defendants Global Traffic Systems, Jo–Lin Hauling and J.O.V. Enterprises, Inc.

Julie L. Phillips, Bumgardner, Hardin & Ellis, Springfield, N.J., for third-party defendant City of Linden.

William G. Robinson, Florham Park, N.J., for for third-party defendant Carbro Const. Corp.

## OPINION

LECHNER, District Judge.

This case arises out of the disappearance of a container of umbrellas en route from the port of Keelung, Taiwan to the port of New York. Plaintiff Berkshire Fashions, Inc. ("Berkshire") has invoked the admiralty jurisdiction of this court pursuant to 28 U.S.C. § 1333.[1]

Presently before the court is the motion of defendant Global Traffic Systems ("Global") to dismiss the Complaint for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(h)(3). Also before the court are a cross-motion of Berkshire to strike the demand for a trial *de novo* and a motion for summary judgment in favor of third-party defendant City of Linden ("City"). For the reasons which follow, the Global's motion to dismiss for lack of subject matter jurisdiction is granted. The remaining motions are moot.

*Facts*

In or about May of 1988, Berkshire, a New York corporation with its principal place of business in New York, consigned 750 cartons of umbrellas from a Taiwanese seller, Jiung Chia Umbrella Enterprises Co., Ltd. ("Jiung Chia"). Berkshire requested that Jiung Chia make all arrangements concerning transportation of the goods from Taiwan to New York. Affidavit of Isaac R. Dweck, ¶ 1 (attached to Notice of Cross–Motion, filed 9 May 1990).

Berkshire paid Jiung Chia for the goods under a bank letter of credit and received from Jiung Chia various invoices and shipping documents including Bill of Lading No. KLNY–0580169, dated 17 May 1988 (the "Bill of Lading"). Berkshire Brief, Ex. 1. The Bill of Lading had been issued by defendant Air–Sea Transport, Inc. ("ASTI"), a foreign freight forwarder

---

**1.** That statute provides:
    The district courts shall have original jurisdiction, exclusive of the courts of the States, of:

(1) Any civil case of admiralty or maritime jurisdiction....
28 U.S.C. § 1333.

which had been hired by Jiung Chia to transport the merchandise.

ASTI was listed as the "Carrier" on the Bill of Lading and, pursuant to the conditions set forth on the reverse side of the Bill of Lading, Berkshire was a "Holder" of the Bill of Lading. Berkshire claims it did not have contact with any ocean carrier other than ASTI and did not receive any other bill of lading prior to or during transportation of the goods. Berkshire Brief at 1–2.

The Bill of Lading indicated the umbrellas were to be loaded aboard the defendant ocean vessel M.V. Hakusan II (the "Hakusan II") at Keelung on 17 May 1988 and delivered to New York. The space designated "Inland Routing" on the Bill of Lading was left blank. The reverse of the Bill of Lading, however, stated "at any time and without notice to the Merchant" the carrier could change the means of transportation or storage, transport the goods by any vessel other than the one named in the Bill of Lading and load, unload or store the goods at any port other than the one named in the Bill of Lading. *Id.*, Ex. 1.

ASTI contracted with Orient Star Consolidating & Forwarding ("Orient Star") for the transportation of the umbrellas aboard the Hakusan II from Taiwan to Los Angeles, California. Orient Star issued a bill of lading to ASTI on 17 May 1990. Global Brief, Ex. 2. An additional bill of lading was issued on 17 May 1990 to Orient Star by defendant Nippon Yusen Kaisha ("NYK"), the company which owned the Hakusan II. The NYK bill of lading listed the port of discharge as Los Angeles and the place of delivery as New York. *Id.*, Ex. 3.[2]

The container containing the 750 cartons of umbrellas was transported by sea from Taiwan to California where it was unloaded from the Hakusan II, placed on a railway car and shipped to New Jersey. In or about June 1988, the container was transferred to a warehouse in Kearny, New Jersey. A truck owned by Global there-

after picked up the container in Kearny and transported it to Global's warehouse in Linden, New Jersey.

On 17 June 1988, a truck owned by Berkshire arrived at the Global warehouse in Linden to pick up the merchandise. The umbrellas, however, were missing. It is Global's position in this litigation that the container in which the umbrellas had been transported was stolen through a forty foot gap in the fence around Global's yard. The other parties appear to agree with Global on this issue, although Berkshire does not admit the manner in which the goods were stolen. Berkshire Brief at 1; City Brief at 2. The gap in the fence was allegedly created by defendant Carbro Construction Company ("Carbro") as part of a sewer installation project for which Carbro had been hired by the City. Global Brief at 3; City Brief at 2.

The Complaint contains one count asserting several causes of action against numerous defendants. In addition to the defendants mentioned above, the Complaint names as defendants: Canopus Shipholding, S.A. ("Canopus"), Showa Kaiun ("Showa"), YFK Cargo Service Inc. ("YFK") and J.O.V. Enterprises, Inc. ("JOV").

The Complaint states Canopus, NYK, Showa, ASTI, Orient Star and YFK were the owners or operators of the Hakusan II. Complaint, ¶ 13. Global and JOV are alleged to be truckers and warehousemen. Complaint, ¶ 15. The legal bases for the Complaint are listed in a single paragraph as follows:

> Defendants' failure to deliver the cargo was caused by their breach of contract, negligence, conversion, and/or breach of warranty, and by reason of the non-delivery, the above named vessel and defendants breached, failed and violated their duties and obligations as common carriers and/or bailees and/or otherwise and were otherwise at fault.

Complaint, ¶ 19.

In their answer to the Complaint, Global

---

**2.** Berkshire claims the bills of lading of Orient Star and NYK were not presented to Berkshire until after loss of the umbrellas. Discovery in

this matter is complete and there is no reason to doubt this assertion of Berkshire.

and Jo–Lin Hauling, Inc. ("JLH")[3] asserted a third-party complaint against Carbro and the City on the grounds that they were at fault in removing the portion of the fence surrounding the Global yard through which Global claims the umbrellas were stolen. The subject matter jurisdiction of the third-party complaint is entirely dependent on the Complaint, which asserts jurisdiction based upon admiralty. 28 U.S.C. § 1333.

The Complaint contains a recital of damages in the amount of $60,000. According to interrogatory answers of Berkshire, however, the umbrellas had been purchased for the sum of $36,675.00. City Brief, Ex. F. Adding to this amount the sum of certain duty and freight fees, Berkshire claims its total loss was $41,585.47. *Id.*, Ex. G (Statement of Loss). Berkshire has received the sum of $45,479.58 in insurance proceeds relating to the loss of the umbrellas. *Id.* at 4 & Ex. I. The amount in controversy therefore appears to be less than the $50,000 threshold presently required to establish jurisdiction based upon diversity of citizenship. 28 U.S.C. § 1332(a).

*Discussion*

Global contends discovery in this action has been completed and, based upon that discovery, it appears the Complaint should be dismissed for lack of subject matter jurisdiction. Global Brief at 1. Rule 12(h)(3) of the Federal Rules of Civil Procedure states: "Whenever it appears by sug-

gestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3).[4]

Berkshire concedes the only potential basis for federal jurisdiction over this action is the breach of contract claim against ASTI based upon its failure to meet the obligations of the Bill of Lading. This claim is asserted to be cognizable in admiralty pursuant to 28 U.S.C. § 1333.[5] The remaining claims against ASTI and the other defendants are asserted to be before the court pursuant to the principles of pendent jurisdiction.[6] Berkshire Brief at 11.

■ Whether a breach of contract action supports the exercise of admiralty jurisdiction depends upon the subject matter of the contract at issue. *Kossick v. United Fruit Co.*, 365 U.S. 731, 735, 81 S.Ct. 886, 890, 6 L.Ed.2d 56 (1961); *In re The Eclipse*, 135 U.S. 599, 608, 34 L.Ed. 269 (1890). In general, a contract must be "wholly maritime in nature to be cognizable in admiralty." *Simon v. Intercontinental Transport (ICT) B.V.*, 882 F.2d 1435, 1442 (9th Cir.1989). However, it is often repeated that "[t]he boundaries of admiralty jurisdiction over contracts—as opposed to torts or crimes—being conceptual rather than spatial, have always been difficult to draw." *Kossick*, 365 U.S. at 735, 81 S.Ct. at 890. *See Ingersol Mill. Mach. Co. v. M/V Bodena*, 829 F.2d 293, 301 (2d Cir.1987), *cert.*

---

**3.** The answer states JLH was incorrectly pleaded in the Complaint as JOV.

**4.** Because this motion is not brought in response to a pleading it is not a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1). In any event, the substance of motion to dismiss under Rule 12(b)(1) and Rule 12(h)(3) is identical.

**5.** At the time the Complaint was filed, diversity jurisdiction did not exist because both Berkshire and a defendant were New York corporations. To meet the requirements of 28 U.S.C. § 1332(a), complete diversity of citizenship must exist at the time the Complaint is filed. In certain circumstances a plaintiff may amend the complaint to drop a dispensable, non-diverse party to cure a defect in diversity jurisdiction. *See, e.g., Newman–Green v. Alfonzo–Larrain,* —— U.S. ——, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989). At oral argument, counsel for Berkshire

indicated the New York defendant has been or will be dropped from this action. Even if the New York defendant were dispensable, however, the filing of an amended complaint based upon complete diversity of citizenship would not cure the defect in diversity jurisdiction because the amount in controversy requirement is not satisfied. 28 U.S.C. § 1332(a) (diversity jurisdiction requires complete diversity of citizenship and amount in controversy in excess of $50,000). Therefore, *the only possible basis for* jurisdiction is admiralty, as argued by Berkshire.

**6.** The other defendants have not joined in Global's motion to dismiss. Nevertheless, Berkshire predicates jurisdiction as to the entire controversy on the single breach of contract claim against ASTI. Because jurisdiction does not exist over that claim, this matter must be dismissed as to all the defendants.

*denied,* 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 860 (1988); *CTI Container Leasing v. Oceanic Operations,* 682 F.2d 377, 379 (2d Cir.1982).

Regardless of the difficulty in classifying some contracts as maritime or non-maritime, the Fifth Circuit recently addressed the question at issue in this case: whether a contract to transport goods over sea and land is a maritime contract. The Fifth Circuit discussed the principles of jurisdiction over maritime contracts as follows:

> To support admiralty jurisdiction in a breach of contract action, the underlying contract must ordinarily be a maritime contract.... Two exceptions to this general rule have developed. First, if the character of a contract is primarily maritime and the non-maritime aspects are merely incidental, admiralty jurisdiction may still be invoked.... Second, if a contract is "mixed"—having maritime and non-maritime aspects—maritime jurisdiction exists if the court can enforce the maritime obligations separately without prejudice to the rest.

*Kuehne & Nagel (AG & Co.) v. Geosource, Inc.,* 874 F.2d 283, 290 (5th Cir.1989) (citations omitted). *Accord Simon,* 882 F.2d at 1442. Based on these principles, the Fifth Circuit concluded: "A contract to transport goods over both sea and land obviously is not a traditional maritime contract." *Id. Cf. Luvi Trucking, Inc. v. Sea–Land Serv., Inc.,* 650 F.2d 371, 373 (1st Cir.1981) ("it has long been the rule that contracts involving cargo are maritime only to the extent the cargo is on a ship or being loaded on or off a ship.").

The *Kuehne* court held the contract at issue in that case was not a maritime contract because it involved transportation of goods by sea from Northern Europe to Turkey and by truck from Turkey to Iran. *Kuehne,* 874 F.2d at 290. The cargo traveled over land for distances up to one thousand miles, which led the court to conclude: "Such extensive land based operations cannot be viewed as merely incidental to the maritime operations." *Id.* Because the plaintiff had alleged breaches of both the land and sea portions of the bills of lading,

the court further concluded it could not separate the maritime portions of the contract and retain jurisdiction over them. The breach of contract claim therefore was not cognizable in admiralty. *Id.*

■ Similarly, in the instant action, the transportation of the umbrellas from Taiwan to New York involved substantial overland transportation which cannot be viewed as merely incidental to the Bill of Lading. Berkshire unpersuasively argues the Bill of Lading was predominately a maritime contract. The flaw in this argument is that admiralty jurisdiction exists only over contracts in which the overland transportation of cargo is "incidental" to the primary maritime obligations under the contract. *Simon,* 882 F.2d at 1442; *Kuehne,* 874 F.2d at 290. Predominance is not relevant in this analysis. While the umbrellas at issue in this case may have logged more miles at sea, the approximately three-thousand mile journey across the United States cannot be construed as incidental to the contract.

Moreover, the incident at issue in this case has no relationship with the overseas voyage of the Hakusan II. In *Luvi Trucking, Inc. v. Sea–Land Serv., Inc., supra,* the First Circuit held there was no admiralty jurisdiction over a breach of contract action between a common sea carrier and an overland cargo hauler which had been hired to transport cargo from the carrier's vessels to those of a connecting maritime carrier. 650 F.2d at 372. The *Luvi* court noted that the contract did not involve any maritime element:

> The contract here was to transship semitrailer cargo containers overland. The overland hauler, Luvi, never came in contact with a ship; the cargo vans were loaded and unloaded by someone else. Luvi merely picked up the vans at one terminal and drove them to the other. There is no basis for characterizing the contract as maritime.

*Id.* at 373–74.

In this case, the connection between the non-maritime and maritime aspects of the Bill of Lading are even more attenuated than in *Luvi.* Global, the moving party on this motion to dismiss, had no contact what-

soever with the overseas carrier. In fact, Global did not take possession of the goods until they had been off-loaded from the Hakusan II in California, transported by rail across the United States and stored in a warehouse in Kearny. Nothing in this chain of events suggests the loss of the goods at Global's warehouse in Linden had anything to do with the maritime aspect of the Bill of Lading.

Berkshire's argument that this was predominately a maritime contract is more properly addressed to the second exception noted by the *Kuehne* court, whether the maritime and non-maritime portions of the contract are severable. *Kuehne,* 874 F.2d at 290. Even assuming the Bill of Lading was predominately a maritime contract, however, Berkshire has asserted claims relating only to the events which transpired while the cargo was in Linden. If this claim were severable from the overseas transportation of the umbrellas, it would not support the exercise of admiralty jurisdiction.

Finally, Berkshire argues the Bill of Lading did not indicate the goods were to be transported by any method other than ocean-going vessel and therefore, from Berkshire's point of view, the Bill of Lading involved no non-maritime elements. ASTI's unilateral decision to transport the goods across the United States by land is irrelevant, according to Berkshire, because the Bill of Lading did not provide for any method of transportation other than by sea. Essentially, Berkshire attempts to characterize the Bill of Lading as a "wholly" maritime contract to invoke admiralty jurisdiction. *Simon,* 882 F.2d at 1442.

Berkshire's argument requires an unrealistic interpretation of the facts of the transaction and the terms of the Bill of Lading. In *Kuehne,* the bills of lading explicitly provided for overland transportation of the goods. 874 F.2d at 285. The court nevertheless declined to separate the non-maritime and maritime obligations of the defendants because "each bill of lading contains a fixed, single freight charge of the sea carriage and the overland transportation." *Id.* at 290 (citing *Alaska Barge and Transport, Inc. v. United States,* 373 F.2d 967, 972, 179 Ct.Cl. 216 (1967)).

In the instant case, the task of separating the maritime and non-maritime activity would be even greater because the Bill of Lading contained one charge for transportation of the goods from Keelung to New York without itemizing the specific manner of transportation. *Alaska Barge and Transport,* 373 F.2d at 972 (separation of maritime and non-maritime elements in bills of lading that did not itemize the service's maritime portions would be "unduly burdensome") (as cited in *Kuehne,* 874 F.2d at 290).

It is of no moment that Berkshire did not know that the goods would be transported in a manner other than by sea or did not realize delivery under the Bill of Lading involved a significant amount of travel over land. The Bill of Lading expressly reserves the right of the Carrier to change the manner of transportation and the vessel of transportation at any time without notice to the Holder of the Bill of Lading. Thus, even if Berkshire expected the goods to arrive at the port of New York aboard the Hakusan II, there was no right to this manner of delivery.

Furthermore, Berkshire's failure to recognize at the time of entering the contract with Jiung Chia that the goods might cross the United States by land was unreasonable. The record demonstrates that the umbrellas travelled by container, a method of transporting cargo which may be utilized by ship, rail or truck. *See CTI–Container Leasing,* 682 F.2d at 381; *Luvi Trucking, Inc.,* 650 F.2d at 372; *Itel Containers Int'l v. Atlanttrafik Express Serv.,* 668 F.Supp. 225, 227 (S.D.N.Y.1987). The only way for the umbrellas to reach the port of New York from Taiwan aboard the Hakusan II would be to travel across the Pacific Ocean, through the Panama Canal, across the Gulf of Mexico, the Caribbean Sea and the Atlantic Ocean to the Verrazano Narrows. As Berkshire conceded at oral argument, given the fact that the goods were a single unit of shipment by container, it was not only foreseeable at the time of contracting with Jiung Chia but also economically probable that a preferable route would have been to off-load the container from the Hakusan II in Califor-

nia and transport it by land to New York, as occurred in this case.[7]

In short, the position of Berkshire is untenable in light of the facts of this case. This is not a case in which the goods were lost at sea or damaged by sea water. The theft of the umbrellas occurred after the goods had been in the possession of at least three separate carriers in the United States (i.e., the rail carrier, the initial warehouseman in Kearny and Global) and three bills of lading had been issued relating to the transportation of the goods across the Pacific Ocean. The parties concur in the fact that only the Bill of Lading and the loss of the goods in Linden are relevant to Berkshire's claim. Bringing this dispute within admiralty jurisdiction stretches its boundaries too far. Accordingly, the motion of Global to dismiss this action for lack of subject matter jurisdiction is granted.

*Conclusion*

For the foregoing reasons, the Complaint is dismissed for lack of subject matter jurisdiction. Because there is no independent basis of jurisdiction for the third-party complaint, it is dismissed as well. An appropriate Order accompanies this Letter–Opinion.

---

7. Although Berkshire admits it had prior dealings with Jiung Chia involving sales of goods, there is nothing in the record to indicate the route along which they were transported from the Orient to Berkshire.